# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## JANUARY TERM, A. D. 1893.

### IN RE ADVISORY OPINION TO THE GOVERNOR.

1. A suspension from office and appointment to fill the office under Section 15 of Article 4, of the Constitution, do not affect the suspended officer's right to qualify for, or exercise the duties of a succeeding term of the same office; nor do they prevent a Governor succeeding the one who made the suspension from commissioning the suspended officer for the new term.

2. An appointment to fill an office, the incumbent of which has been suspended under Section 15, of Article 4, of the Constitution, cannot be for a longer period than the remainder of the pending term of the suspended officer, and until the qualification of his successor.

*Hon. Henry L. Mitchell, Governor of the State of Florida :*

SIR: We have the honor to acknowledge the receipt of your communication dated the 17th inst., in which you state that at the general election in 1890, James E. Johnson was elected tax collector for Duval

county, and that he was re-elected to the office at the general election in 1892; that on the 29th day of October, 1892, he was suspended from office by your predecessor, Gov. Fleming, for neglect of duty, and on the 26th of November, 1892, E. W. Gillen was commissioned as tax collector of Duval county, to act until the adjournment of the next session of the Senate; and you ask an interpretation of the Constitution upon the question of your power and duties as to commissioning Johnson for the term to which he was elected in the year 1892.

The Constitution (Section 13, Article 4) authorizes the Governor to require our opinion "as to the interpretation of any portion of this Constitution upon any question affecting his executive powers and duties," and it makes it our duty to render an opinion in writing. The duty thus devolved upon us by the organic law goes no further than the interpretation of the Constitution upon some particular question affecting your executive power and duties.

Any question of executive duty involves necessarily that of executive power. The question of your power under the facts stated by you involves that of the effect of the suspension made by your predecessor. At the time of this suspension Johnson was holding the office of tax collector of Duval county for the term commencing on the first Tuesday after the first Monday in January, 1891, and to end on the corresponding Tuesday of January, 1893. From this term of office he

In Re Advisory Opinion to the Governor.

was suspended on the 29th day of October, 1892, for neglect of duty in office, and the effect of the suspension was to arrest and take away from him the right and power to perform the duties of the office. This deprivation or arrest of the power and right to exercise the functions of the office until the Senate shall act, or fail to act, at its next ensuing session, is the effect which the Constitution has attached to the executive ascertainment of the official delinquency which the order of suspension affirms; and there is but one other limitation to this effect, and that is the power of the Governor to reinstate at any time, at least until the Senate may meet, which power adheres to the executive office, to be exercised whenever the Governor finds that the circumstances of any case justify it. If the Senate meets and refuses to concur with the Governor in a removal of the officer for the cause stated in the order of suspension, or if it meets and adjourns without taking action upon the matter, the law restores the officer; while, if the Senate concurs in a removal of the officer, his right to the office is, in effect, adjudged to have been taken away and forfeited as from the date of the order of suspension, or at least the notice thereof, as the penal consequence of the delinquency stated in the order of suspension and recognized by the Constitution. (Section 15, Art. 4.) When the Senate meets *pending the term* of the office from which the suspension has been made, and fails to act, or refuses to remove, the restoration is to the exercise of the functions of the place for the balance of such *pending* term, and

also to the salary or compensation for the time he was suspended; whereas, if it does not meet until after the term, then there can be no restoration, except to the right to the salary or other compensation for the time of suspension. Had the Senate met in special session between the day the order of suspension was made in this case and the first Tuesday after the first Monday of January of the present year, and adjourned without taking action on the question of Johnson's removal, or had it refused to remove him, the restoration would have been to the term from which he was suspended; or, meeting thus, had it removed him, the removal would have been from that term of office, and the combined executive and senatorial action would have had no effect upon his right to any future term. The delay of senatorial action, sometimes necessitated, in the absence of a special session, by the system of biennial sessions of the Legislature, to a period subsequent to the termination of the term from which there is suspension, cannot enlarge or change the effect of that action, or of the antecedent executive action. The final consummation intended by a suspension must, as shown in State ex rel. Attorney-General vs. Johnson, lately decided, always be a removal of the officer; and this removal is for the remainder of the term from which he is suspended, and nothing more. The remainder of the existing term is, including its incidents and rights, in our judgment, all the removal can act on or affect. There is certainly no express provision in the organic

In Re Advisory Opinion to the Governor.

law that it shall affect any other term; nor is the officer in the exercise of other official functions than those covered by his title to the pending term.

Again, the Constitution has not given to the suspension or removal the effect of disqualifying the suspended or removed person from holding the same or any other office in the future; on the contrary, not only is there an utter absence of any such provision, but an intention that it shall not have this effect is also shown in a separate and distinct declaration of what the framers of the Constitution and the people intended should have that effect, which declaration is to be found in the fifth section of the sixth article. That section directs the Legislature to enact the necessary laws to exclude from every office of honor, power, trust, or profit, civil or military, within the State, all persons convicted of bribery, perjury, larceny, or of infamous crime, and for other causes therein stated, yet provides that this legal disabilty shall not accrue until after trial and conviction in due form of law. The legislation enforcing this section is to be found in the Revised Statutes, § 211; and the 214th section enacts that every office shall be deemed vacant upon the conviction of the incumbent of any felony or of an offense involving a violation of his official oath. The limited effect which it was intended that the suspensions and removals under discussion should have is also shown by the provision of the section which authorizes them, (Section 15, Art. 4) that "the suspension or removal

herein authorized shall not relieve the officer from indictment for any misdemeanor in office."

A suspension or removal not having of itself the effect to taint the person or officer, either while suspended or after removal, with any disqualification to hold any office, we are unable to see how it can affect his right to exercise the functions of a future term of the same office. He is as qualified for or as eligible to election to a future term pending the suspension, or after the removal, as he was before the suspension. If the suspension under consideration had been made before the general election in October, it would not have impaired the right of the people to elect Johnson to the new term commencing on the first Tuesday after the first Monday in the present month; and a removal by the Senate subsequent to such election, and pending the old term, would not have rendered him ineligible to enter upon the office and perform its duties. Such removal, made at the time just indicated, would have taken from him forever the office and all its emoluments for the remainder of the term, or from the day of the suspension until the Tuesday last named; but it would have taken nothing more, nor had any other effect whatever upon his rights or capacities as to official station or his power to qualify under Section 7 of Article 8 of the Constitution, hereafter mentioned, for any such station to which he might have been elected.

How the mere suspension can in any way have a larger or more extended operation or disabling effect, or how it can derive additional potency from the mere

In Re Advisory Opinion to the Governor.

postponement of the action of the body whose concurrence is essential to make the suspension a removal, we cannot see or find reason. Perhaps it may be said that it is contrary to good public policy that a person who has been suspended during one term of an office should be permitted to enter upon the duties of a subsequent term of the same office, pending such suspension. To this the answer is that a public policy which would impose upon the citizen disabilities as to official station must at least be consistent with the organic law which defines the requisites for such station, and not antagonistic thereto. If the Constitution attached to the *removal*, whenever it might be consummated by the concurrence of the Senate, a disability to hold the succeeding or future term or terms of the same office, it might naturally and logically follow that, pending the suspension, the functions of the succeeding term could not be performed, but where it fails entirely, as it does, to give even the removal, whenever consummated, any such effect, no room is left as a standing place for any such theory of public policy. We can not extend by implication, or by inferences founded upon what might seem to be a wholesome public policy, the effect of a constitutional provision of a penal character, or give to the suspension or removal any result which is not clearly inferable from the terms of the Constitution, but must confine its consequence within the limits which are plainly ascribed to it by the organic law. It is penal in its nature, and is to be strictly construed as to its effect, yet it does not seem to us to

be necessary to invoke this rule to reach the conclusion we have intimated.

Our opinion is that the suspension by your predecessor, Gov. Fleming, is confined in its legal effect, as it is in fact, to the term of office existing at the time the suspension was made, and had of itself no effect upon Johnson's title, capacity, or right to hold and exercise the office for the term which began on the first Tuesday after the first Monday in the present month, to which term, you say, he was chosen at the last general election.

As intimated above, the Constitution contemplates that county officers, including tax collectors, chosen at the general election of October last, should have entered upon the duties of their offices on the first Tuesday after the first Monday of the present month (Section 14, Art. 18), and it also requires that all county officers, except assistant assessors of taxes, shall, before entering upon their duties, be commissioned by the Governor, but that no such commission shall issue to any such officer until he shall have filed with the Secretary of State a good and sufficient bond in such sum and on such conditions as the Legislature shall by law prescribe, approved by the County Commissioners of the county in which the officer resides and by the Comptroller (Section 7, Art. 8). The Legislature has prescribed the amount and condition of the bonds of tax collectors. Sections 616, 617, Rev. St. The section of the Constitution last cited also provides that, if any person elected or appointed to any county office

shall fail to give bond and qualify within 60 days after his election, the office shall become vacant; and it and Section 13, of Article 16, and the Revised Statutes, §§ 616, 620, 621, make provision as to sureties.

The fact that the terms of Gillen's commission are that he shall hold office until the adjournment of the next session of the Senate, to which fact we have given the careful consideration due it, does not, as was decided in State *ex rel.*vs. Johnson, referred to above, confer upon Gillen any other or greater tenure of office than the Constitution gives him. In our judgment, the term of such an appointee can never be longer than the remainder of the term of the officer suspended and until the qualification of his successor. The appointment is to fill "any *office*" the incumbent of which has been suspended. Section 21, Art. 4. Had another person than Johnson been chosen in October last for the term commencing this month, certainly Gillen's tenure would have terminated with Johnson's, and could not have lasted longer than the qualification of the successor. Section 14, Art. 16.

. The result of these views is that the Constitution contemplates the commissioning of Johnson under his re-election, notwithstanding the mere fact of his suspension and the appointment of Gillen by your predecessor, if Johnson has not been delinquent in giving bond and qualifying.

This is the extent of your inquiry, as we understand it, and we consequently omit any discussion of the

power of an executive under the Constitution to further suspend for an act committed prior to the term in which such order may be made.

Very respectfully,

GEO. P. RANEY, Chief Justice.

R. F. TAYLOR, Justice.

MILTON H. MABRY, Justice.