295 So.2d 609 (1974)
STATE of Florida ex rel. Jack M. Turner, Relator,
v.
Richard T. EARLE, Jr., Chairman, et al., Respondents.
No. 44339.
Supreme Court of Florida.
February 27, 1974.
As Modified on Denial of Rehearing May 31, 1974.
*610 Marion E. Sibley, of Sibley, Giblin, Levenson & Ward, Miami Beach, for relator.
Wm. Reece Smith, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Thomas C. MacDonald, Jr., of Shackleford, Farrior, Stallings & Evans, John Germany of Holland & Knight, Tampa, and Sam Daniels, Miami, for respondents.
ROBERTS, Justice.
This cause is before us on petition for writ of prohibition by which relator seeks to prohibit the Judicial Qualifications Commission from proceeding further in the formal proceedings initiated by the Commission against him. Relator urges that the Commission is without constitutional jurisdiction to proceed against him for acts allegedly committed by him while he served as Criminal Court of Record Judge and prior to the time he was elected and commissioned as a Circuit Judge, in and for the Eleventh Judicial Circuit of this State.
Preliminarily, we directed that rule nisi in prohibition issue and in said order circumscribed the following question for briefing by the respective parties:
"Does the Judicial Qualifications Commission have jurisdiction to investigate and if appropriate to recommend discipline of, an incumbent circuit judge for misconduct alleged to have been committed prior to the time he became a circuit judge (and while he held another office not within the jurisdiction of the Judicial Qualifications Commission)?"
Relative to our jurisdiction and the remedy employed by relator to vest this court with jurisdiction of the immediate cause, we must initially conclude that prohibition does not lie herein because the Judicial Qualifications Commission has no power to enter judgments or orders. The Judicial Qualifications Commission is not a judicial tribunal or commission within the purview of Article V, Section 3(b)(4), Florida Constitution, F.S.A.[1] But rather it is the duty of this commission to investigate judicial conduct and make recommendations when agreed to by two-thirds of the members as to discipline of a judge to *611 the Supreme Court.[2] The commission is an adjunct of the judicial branch of the government and shares the responsibility with the Supreme Court in matters involving discipline of judges. It is the Supreme Court which must take the final action. In In Re Kelly, a proceeding on recommendation of the commission, this court opined that, "The commission is in fact an arm of this Court dealing with a vital function of the Court and under its exclusive jurisdiction. While the power to render the ultimate judgment in these cases is vested in this Court, the findings and recommendations of the Florida Judicial Qualifications Commission are entitled to receive due consideration and are of persuasive force... . However, the ultimate responsibility of making a determination rests with this Court... ." Prohibition is that process by which a superior court prevents an inferior court or tribunal possessing judicial or quasi-judicial[3] powers from exceeding its jurisdiction in matters over which it has cognizance or usurping jurisdiction over matters not within its jurisdiction to hear and determine. Prohibition is an extraordinary writ, a prerogative writ, very narrow in its scope of operation, used with great caution where ordinary remedies provided by law are not applicable or adequate. State ex rel. B.F. Goodrich Co. v. Trammell, 140 Fla. 500, 192 So. 175 (1939); Burkhart v. Circuit Court of Eleventh Judicial Circuit et al., 146 Fla. 457, 1 So.2d 872 (1941); State ex rel. Gillham v. Phillips, 193 So.2d 26 (Fla.App. 1966); State ex rel. Ferre v. Kehoe, 179 So.2d 403 (Fla.App. 1965); Owen et al. v. Bond et al., 83 Fla. 495, 91 So. 686 (1922). In State ex rel. Swearingen et al. v. Railroad Commissioners of Florida, 79 Fla. 526, 84 So. 444 (1920), this Court succinctly stated:
"The statutes regulating the procedure in issuing writs of prohibition contemplate the use of the writ only to restrain the unlawful exercise of judicial or quasi judicial power.
"At common law it is well settled that a writ of prohibition must be directed to some judicial tribunal or officer. In other words, it lies only to prevent or control judicial (or quasi judicial) action, as distinguished from legislative, executive, or ministerial action. Accordingly, it is generally held that prohibition will not lie to prevent the performance of ministerial duties by executive or administrative officers, or to restrain the performance by the courts of duties which are merely administrative and ministerial."
Since the commission lacks the power essential to judicial or quasi-judicial tribunals either to reach a final decision or to implement that decision, prohibition is an inappropriate remedy, sub judice.
However, in view of Article V, Section 2(a), Florida Constitution as amended 1973, F.S.A., which provides in pertinent part that "... no cause shall be dismissed because an improper remedy has been sought," Article V, Section 12(c), Florida Constitution 1973, F.S.A., which provides:
"The supreme court shall adopt rules regulating proceedings of the commission, the fil[l]ing of vacancies by the appointing *612 authorities and the temporary replacement of disqualified or incapacitated members. After a recommendation of removal of any justice or judge, the record of the proceedings before the commission shall be made public."
and Article V, Section 3(b)(4), Florida Constitution 1973, F.S.A., which provides:
"(b) Jurisdiction. The supreme court:
"...
"(4) May issue ... all writs necessary to the complete exercise of its jurisdiction."
we have jurisdiction of this cause and in this posture we will proceed with the disposition of the question of law presented.
We are primarily concerned at this time with the above posited question which was specified in our order directing that rule nisi in prohibition issue. With regard to this issue, the following facts presented by Turner in his petition are pertinent. Jack M. Turner is a duly elected and commissioned Circuit Judge of the Eleventh Judicial Circuit in and for Dade County, Florida. He was elected to a six-year term which commenced on the first Tuesday after the first Monday in January, 1973, and was commissioned to this office as Circuit Judge on November 8, 1973. Prior to becoming a Circuit Judge, Turner had been elected and commissioned for a term of four years from the first Tuesday after the first Monday in January, 1969, to the office of Judge of the Criminal Court of Record of Dade County, Florida, and had served in such capacity until the first Tuesday after the first Monday in January, 1973. On April 6, 1973, an indictment was returned against Turner charging that he, as a judicial officer, namely a Criminal Court of Record Judge, on August 14, 1972 through October 13, 1972, conspired to commit the felony of bribery. The Judicial Qualifications Commission initiated formal proceedings against Turner charging him with conduct unbecoming a member of the judiciary based on the events described in the indictment occurring from August 14, 1972, and continuing and including October 13, 1972, alleged acts and conduct which occurred while Turner served as a Criminal Court of Record Judge and before he was commissioned as a Circuit Judge. Based on the aforestated charges, the commission filed a request for suspension of Turner on April 16, 1973, upon which this Court declined to act at that time since Turner filed a statement of his intent not to discharge his duties as Circuit Judge pending disposition of the charges. Subsequently, on August 14, 1973, he was tried before a jury on these charges and was acquitted. Turner states that he has been informed that the commission is proceeding against him and intends to file a second request for his suspension with this Court based upon the same grounds, the charges included in the indictment as above explained.
Relator contends that the commission lacks power to further proceed against him for alleged acts committed by him in another public office. There is no dispute between the parties herein involved that prior to January 1, 1973, the "new" commission[4] could not have investigated or made recommendations to this Court regarding relator since he was not a member of that part of the judiciary within the commission's jurisdiction as defined by Article V, Section 17, Florida Constitution 1968, F.S.A. Prior to January 1, 1973, the Judicial Qualifications Commission had jurisdiction only of alleged misconduct on the part of justices of the Supreme Court, judges of the District Courts of Appeal, and judges of the Circuit Courts. No other judgeships were under the jurisdiction of the Judicial Qualifications Commission. Because of this factual background, the Court in disposing of the matter, circumscribed the above-described question containing particularly the bracketed words "and while he held another office not *613 within the jurisdiction of the Judicial Qualifications Commission." The issue now presented is whether the new commission may now proceed against relator for alleged misconduct occurring prior to his commission as Circuit Judge and while he was in another public office.
Although as aforestated, it is not the prerogative of the Judicial Qualifications Commission to suspend or remove a member of the judiciary from office, but rather only to make recommendations to this effect to the Supreme Court, we are compelled to render a decision by the facts of the instant cause and the necessity to avoid duplicitous and lengthy future proceedings on this matter when such may be avoided by an opinion in the form of a rule-making opinion dispositive of the issue.
Recognizing that there are divergent views, we find that the rule supported by the great weight of authority and specifically adopted by this Court in construing statutory and constitutional provisions authorizing the removal of public officers guilty of misconduct when such provisions do not refer to the term of office in which the misconduct occurred is that a public officer may not be removed from office for misconduct which he committed in another public office or in a prior term of office in the absence of disqualification to hold office in the future because of such misconduct. (See Article VI, Section 4, Florida Constitution 1968, F.S.A.) In Re Advisory Opinion to the Governor, 31 Fla. 1, 12 So. 114 (1893); In Re Advisory Opinion to Governor, 64 Fla. 168, 60 So. 337 (1912); State ex rel. Hardee v. Allen, 126 Fla. 878, 172 So. 222 (1937); Rosenfelder v. Huttoe, 156 Fla. 682, 24 So.2d 108 (1945); State ex rel. Hawthorne v. Wisehart, 158 Fla. 267, 28 So.2d 589 (1946); In re Proposed Disciplinary Action by the Florida Bar Against a Circuit Judge, 103 So.2d 632 (Fla. 1958); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Woods v. Varnum, 85 Cal. 639, 24 P. 843; Speed v. Common Council of City of Detroit et al., 98 Mich. 360, 57 N.W. 406 (1894); Thurston v. Clark, 107 Cal. 285, 40 P. 435 (1895); State ex rel. Schulz v. Patton, 131 Mo. App. 628, 110 S.W. 636 (1908); State ex rel. Attorney General v. Hasty, 184 Ala. 121, 63 So. 559 (1913); State ex rel. Thompson v. Crump, 134 Tenn. 121, 183 S.W. 505 (1916); State v. Scott, 35 Wyo. 108, 247 P. 699 (1926); Jacobs v. Parham, 175 Ark. 86, 298 S.W. 483 (1927); Barham v. McCollum, 174 Ark. 1179, 298 S.W. 484 (1927); Board of Commrs. of Kingfisher County v. Shutler, Okl., 281 P. 222 (1929); Edson v. Superior Court, 98 Cal. App. 367, 277 P. 194; State v. Blake, 138 Okla. 241, 280 P. 833 (1929); In re Fudula et al., 297 Pa. 364, 147 A. 67 (1929); Montgomery v. Nowell, 183 Ark. 1116, 40 S.W.2d 418 (1931); Rice v. State, 204 Ark. 236, 161 S.W.2d 401 (1942); People ex rel. Bagshaw v. Thompson, 55 Cal. App.2d 147, 130 P.2d 237 (1942); State ex rel. Agee et al. v. Hassler, 196 Tenn. 158, 264 S.W.2d 799 (1954); State ex rel. Chitwood v. Murley, 202 Tenn. 637, 308 S.W.2d 405 (1957); People v. Hale, 232 Cal. App.2d 112, 42 Cal. Rptr. 533 (1965); Letcher v. Commonwealth, 414 S.W.2d 402 (Ky. 1966); State ex rel. Stokes v. Probate Court of Cuyahoga County, 22 Ohio St.2d 120, 51 Ohio Ops.2d 180, 258 N.E.2d 594 (1970); Smith v. Godby, 174 S.E.2d 165 (W. Va. 1970), 42 ALR3d 675;[5] see also House of Representatives *614 42nd Cong., 3d Sess., Report No. 81, Inquiry as to Impeachment in Credit Mobilier Testimony as contained in Impeachment, Selected Materials, Committee on the Judiciary, House of Representatives, Ninety-third Congress, First Session, United States Government Printing Office, Washington, 1973.[6] This principle is *615 equally applicable to judicial officers who are clearly encompassed within the classification of public officials.
This Court speaking through the revered late Justice Terrell in Rosenfelder v. Huttoe, 156 Fla. 682, 24 So.2d 108 (1945), emphatically stated:
"No rule is better settled under our democratic theory than this; When one is re-elected or re-appointed to an office or position he is not subject to removal for offenses previously committed."
Therein, the acts with which appellee had been charged had occurred when he had held another and different position from which he had later been promoted.
In In re Advisory Opinion to Governor, 64 Fla. 168, 60 So. 337 (1912), this Court held that,
"The power thus given the Governor to suspend the incumbent of an office and to fill the office by appointment is necessarily confined to the current term of the office. See Advisory Opinion to Governor, 31 Fla. 1, 12 So. 114, 18 L.R.A. 594. The causes for suspension are `malfeasance, or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency,' and the Constitution contemplates that the causes for suspension from office shall arise from the conduct of the officer during the term for which the officer is then in commission. You are therefore respectfully advised that the Constitution does not authorize the Governor to suspend an incumbent of the office of county commissioner for an act of malfeasance or misfeasance in office committed by him prior to the date of the beginning of his present term of office as such county commissioner."
Likewise, in State ex rel. Hawthorne v. Wisehart, 158 Fla. 267, 28 So.2d 589 (1946), this Court explained that the power of suspension and removal for misconduct in office is limited to the current term. See also, In re Proposed Disciplinary Action by The Florida Bar Against a Circuit Judge, 103 So.2d 632 (Fla. 1958); State ex rel. Hardee v. Allen, 126 Fla. 878, 172 So. 222 (1937). Reasoning that when the effect of the removal or suspension is not disqualification from holding office in the future, misconduct in a previous public office can not be a basis for removal from office in another office or subsequent term of office, this Court in In Re Advisory Opinion to the Governor, 31 Fla. 1, 12 So. 114 (1893), opined:
"Again, the constitution has not given to the suspension or removal the effect of disqualifying the suspended or removed person from holding the same or any other office in the future; on the contrary, not only is there an utter absence of any such provision, but an intention that it shall not have this effect is also *616 shown in a separate and distinct declaration of what the framers of the constitution and the people intended should have that effect, which declaration is to be found in the fifth section of the sixth article. That section directs the legislature to enact the necessary laws to exclude from every office of honor, power, trust, or profit, civil or military, within the state, all persons convicted of bribery, perjury, larceny, or of infamous crime, and for other causes therein stated, yet provides that this legal disability shall not accrue until after trial and conviction in due form of law. The legislation enforcing this section is to be found in the Revised Statutes, § 211; and the 214th section enacts that every office shall be deemed vacant upon the conviction of the incumbent of any felony or of an offense involving a violation of his official oath. The limited effect which it was intended that the suspensions and removals under discussions should have is also shown by the provision of the section which authorizes them, (section 15, art. 4) that `the suspension or removal herein authorized shall not relieve the officer from indictment for any misdemeanor in office.'
"A suspension or removal not having of itself the effect to taint the person or officer, either while suspended or after removal, with any disqualification to hold any office, we are unable to see how it can affect his right to exercise the functions of a future term of the same office. He is as qualified for or as eligible to election to a future term pending the suspension, or after the removal, as he was before the suspension... ."
See also State ex rel. Thompson v. Crump, 134 Tenn. 121, 183 S.W. 505, 508 (1916); State ex rel. Chitwood v. Murley, 202 Tenn. 637, 308 S.W.2d 405 (1957); see also Speed v. Common Council of City of Detroit et al., 98 Mich. 360, 57 N.W. 406 (1894). Article VI, Section 4, Florida Constitution, 1968, F.S.A., provides the grounds for disqualification from holding public office. This section provides:
"No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability."
In State ex rel. Schultz v. Patton, et al., 131 Mo. App. 628, 110 S.W. 636 (1908), it was held:
"The proceeding is authorized thereby for `cause shown'; and while it seems that the defalcation in the office of collector ought to be sufficient cause for removal from the office of treasurer within the contemplation of the statute, supra, the weight of authority indicates and supports the law to be that, unless the incumbent has been convicted in a court of law prior to such proceeding, the misconduct for which a removal is sought, in the absence of statutory specifications to the contrary, must be misconduct with respect to the execution of the particular office from which the incumbent is sought to be ousted, and such misconduct must constitute a legal cause for removal, and affect a proper administration of such office."
A public officer is elected for a term and sworn to duties of office for that term. State ex rel. Chitwood v. Murley, supra. One term of office has been generally held to be separate and distinct from other terms of the same office. People ex rel. Bagshaw v. Thompson, 130 P.2d 237 (Cal. 1942); Thurston v. Clark, 107 Cal. 285, 40 P. 435. It was held in Jacobs v. Parham, 175 Ark. 86, 298 S.W. 483 (1927), that each term of office is a separate entity and that suspension may not be had for official misconduct during a prior term of office. People v. Hale, 232 C.A.2d 112, 42 Cal. Rptr. 533 (1965).
The pertinent constitutional provision relative to the disciplinary and removal proceedings of judicial officers do not refer to the term in which the misconduct *617 occurred[7] and thus the precept adopted by the majority of jurisdictions including Florida, i.e., that acts of a public officer during a previous office or previous term are not cause for removal from office in the absence of disqualification to hold office in the future, applied sub judice. The court in State ex rel. Stokes v. Probate Court of Cuyahoga County, 22 Ohio St.2d 120, 51 Ohio Op.2d 180, 258 N.E.2d 594 (1970), stated that an office must be limited to a single term in which the misconduct in office charged against the public officer occurred and in the absence of clear legislative language making conduct in prior terms a ground for removal from office. The ground alleged for removal must have occurred during the term in which he was sought and subsequent to the exercise of the power to elect vested in the electors.
Respondents rely upon the decision of the Supreme Court of Pennsylvania in In Re Greenberg, 442 Pa. 411, 280 A.2d 370 (1971), for a contrary view. However, therein the misconduct charged against Judge Greenberg occurring prior to his ascendancy to the bench amounted to a conviction of a federal offense  twenty-one counts of using the mails to defraud. The Pennsylvania court explained:
"In its conclusions of law the Board stated that the conviction in the United States District Court of a judge of the court of common pleas of a conspiracy to use the United States mail to defraud, `a felony-type offense', `constitutes conduct which prejudices the proper administration of justice and brings the judicial office into disrepute.' It also concluded that it is contrary to the intent and purpose of Article V, Sec. 18 of the Constitution of Pennsylvania that a judge of the court of common pleas `hold judicial office, administer the judicial power of the Commonwealth, exercise judicial functions and perform judicial acts while he himself stands convicted of unlawful and felonious acts.' We accept both the findings and conclusions of the Board."
It, therefore, becomes significant that Turner in the instant matter was acquitted rather than convicted of the acts charged.
We are not unmindful of the existence of a minority rule as set forth by the New *618 York court in Sarisohn v. Appellate Division of the Supreme Court, 31 N.Y.2d 36, 286 N.Y.S.2d 255, 233 N.E.2d 276 (1967). However, since such is a minority view and the Supreme Court of Florida has five times aligned itself to the majority rule to the contrary,[8] this Court prefers to follow the doctrine of stare decisis and adhere to the view stated by Mr. Justice Terrell in Rosenfelder v. Huttoe, supra.
Furthermore, we must note that the question involved sub judice was not before this Court in In Re Kelly, 238 So.2d 565 (Fla. 1970). This opinion does not recede from and is not to be confused with the decision in In Re Kelly, supra. In the Kelly case, the investigation did extend backwards for a long period of time and into another term of Judge Kelly but it must be remembered that at all times complained of Judge Kelly was a circuit judge and within the jurisdiction of the Qualifications Commission. Therein lies the difference in the two cases. Turner's alleged misconduct occurred when he was not within the jurisdiction of the Qualifications Commission as a matter of law and fact. Kelly's misconduct occurred when he was within the jurisdiction of the Qualifications Commission as a matter of law and fact. Therein lies the difference between the two cases and calls for a different rule of law.
Relator cannot be removed from office by the new Judicial Qualifications Commission for acts occurring during a prior term in a different office, i.e., Criminal Court of Record Judge, absent conviction of felony or other disqualification from holding office. We reiterate that the final decision as to reprimand or removal of a judge when warranted is for the Supreme Court when proceeding under Article V, Section 12(d). The Judicial Qualifications Commission is in effect an investigatory commission and as such it has the right to investigate matters occurring within a reasonable time but not exceeding two years[9] behind its origin where such investigation and matters are germane to an alleged act of misconduct occurring after January 1, 1973. It may investigate backwards for a reasonable time behind a present term of office as a basis for misconduct in a present office or term of office only when such investigation is in relation to a charge of misconduct occurring in a present term of office. The Supreme Court of Pennsylvania in In Re Fudula, et al., supra, stated, and we agree:
"This case states, what seems to be the correct rule, that `the acts of an officer during a previous term, though not grounds for impeachment, may be considered in so far as they are connected with or bear upon his general course of conduct during his present term, for the limited purpose of inquiring into his motive and intent as to the acts and omissions charged to him during his second term.'"
and in State ex rel. Attorney General v. Hasty, supra, the Supreme Court of Alabama declared:
"While we have eliminated the acts of the previous term, as grounds of impeachment, we have considered some of them as evidential facts, in so far as they are connected with or bear upon the respondent's general course of conduct during the second term, for the limited purpose of inquiring into the motive and intent of the respondent as to the acts and omissions charged to him during the second term."
These pronouncements are in accord with our recent decision in In Re Kelly, supra, wherein we stated as obiter dicta *619 that the commission may at any time consider acts of misconduct reflecting adversely upon the proper performance of the duties of the judicial office held. In this cause, we have cited with approval the Kelly case and now specifically adhere to the ruling of the case because it related to entirely different facts. Incidentally, the decision in the Kelly case was a partial receding from the pronouncement of the Court authored by the late Justice Glenn Terrell in Rosenfelder v. Huttoe, 156 Fla. 682, 24 So.2d 108 (1945).
All dictum in this opinion must be read in the context of the circumscribed facts and not considered a precedent in cases involving different facts. The purpose of the dictum is merely to show the expanse of the total research and the logic supporting the judgment dispositive of the facts in the Turner case and no other.
By way of caveat, we have observed that there is an hiatus in the law in certain matters where election law violations become a subject of disciplinary investigation. For example, where an attorney is a candidate for and is elected to a judgeship and commits flagrant election law violations in so doing, he escapes investigation by The Florida Bar upon becoming a Circuit Judge under the ruling of this Court in In Re Proposed Disciplinary Action by
The Florida Bar Against a Circuit Judge, supra.[10] Yet, he also would escape investigation by the Judicial Qualifications Commission in that he was not a judge at the time of the alleged offense. We, therefore, respectfully call to the attention of the Legislature this deficiency with the thought that it might want to provide some corrective remedy by submitting a resolution for constitutional amendment.
Thus, it is our opinion, and we hold:
(1) Prohibition is not an appropriate remedy to challenge proceedings by the Judicial Qualifications Commission, but this Court has jurisdiction in this cause under its rule making power and the all writs provisions of the Constitution.
(2) Consistent with the overwhelming weight of authority in the nation as hereinabove set forth, we hold that a public official cannot be disciplined or removed from the office of Circuit Judge upon which he entered January 2, 1973, for misconduct alleged to have occurred in 1972 while such public officer held the office of Judge of the Criminal Court of Record, and office not within the jurisdiction of the Judicial Qualifications Commission at anytime during the year of 1972. This holding is not intended in any manner or wise to recede from the Kelly case, supra, which was anchored to an entirely different set of facts as hereinabove mentioned and set forth. Significantly but not controlling, Judge Turner was acquitted by a jury of the charges complained of by the Judicial Qualifications Commission.
(3) The Judicial Qualifications Commission may investigate the alleged misconduct of the Relator, Judge Jack M. Turner, within a reasonable time backwards but not exceeding two years behind the date upon which he assumed new duties having been elected Circuit Judge in the 1972 elections, but any misconduct established during 1972 cannot, standing alone, serve as a basis for his discipline as a Circuit Judge but can be used only insofar as such investigation develops evidence germane to charges allegedly occurring in the current term of office.
It is hardly to be expected that the exact situation here would ever arise again because, *620 under revised Article V which became effective January 1, 1973, all courts were abolished except the Supreme Court, District Court of Appeal, Circuit Courts, and County Courts, all of which, under the revised Article V, are within the jurisdiction of the Judicial Qualifications Commission.
The former views being dispositive of the cause sub judice, it is not necessary to consider other questions at this time.
The commission has consistently complied with the rules adopted by this Court regulating proceedings of the commission, and we have no idea that the commission will do otherwise in these proceedings or otherwise. However, if such should ever occur, jurisdiction is available to this Court through the all writs provision of the Constitution, Article V, Section 3(b)(4), Constitution of Florida, 1973 F.S.A.
Having thusly announced the principles of law applicable to the present controversy and believing as just above stated that final judgment is unnecessary, jurisdiction of the subject matter and the parties is retained for the purposes of making such future judgment in the premises as the exigencies of the situation may require or permit.
It is so ordered.
CARLTON, C.J., and ADKINS and McCAIN, JJ., concur.
ERVIN, J., dissents with opinion concurred in by BOYD, J.
BOYD, J., dissents with opinion concurred in by ERVIN, J.
ERVIN, Justice (dissenting):
Section 12 of Article V of the Florida Constitution, F.S.A., contains no such impediments upon the Commission's investigating and recommending authority as are read into it by the majority from extraneous precedents relating to gubernatorial suspensions and legislative removals or impeachments of public officers. Section 12 is a new approach to the problems involved in disciplining judges and the business of seeing to it that they are of fit character for their judicial roles. It was proposed to the public for ratification as a new disciplinary process relating only to the judiciary and different in scope from old forms of suspension and removals and impeachments of public officers generally.
Section 12 provides in pertinent parts:
"(d) Upon recommendation of two-thirds of the members of the judicial qualifications commission, the supreme court may order that the justice or judge be disciplined by appropriate reprimand, or be removed from office with termination of compensation for willful or persistent failure to perform his duties or for other conduct unbecoming a member of the judiciary, or be involuntarily retired for any permanent disability that seriously interferes with the performance of his duties... .
"(e) The power of removal conferred by this section shall be both alternative and cumulative to the power of impeachment and to the power of suspension by the governor and removal by the senate." (Emphasis added.)
It ill behooves this Court to issue a writ of prohibition or an "all writs" order in this matter, which latter term is nothing more than "shorthand" for all extraordinary writs necessary to the complete exercise of its jurisdiction. Issuance of a writ herein is a premature intrusion into the constitutional functions of the Commission. Judicial restraint dictates that this Court await the recommendation of the Commission in the Judge Turner matter without moving in to preclude its ever making an investigation therein.
I am not in agreement with the view the Commission is an "arm of the Court" as *621 characterized in the Judge Kelly case[1] and in the majority opinion. It is an independent constitutional body whose membership is not selected by this Court or subject to its control as, e.g., is the Florida Board of Bar Examiners pursuant to Section 15, Article V, Florida Constitution, F.S.A. It is no more an arm of this Court than are judicial nominating commissions.
The quoted language from Section 12 does not fix any specific time limits or periods beyond which particular acts of misconduct of a judge may not be investigated by the Commission. The power to remove and discipline is made "cumulative" to the grounds of impeachment and gubernatorial suspension and is not geared down by time limitation precedents applying to those forms of suspension and removal. This "cumulative" power relates to any "conduct unbecoming a member of the judiciary" without reference to time of its occurrence. Impeachment under Sec. 17, Art. IV Const., F.S.A., is limited to "misdemeanor in office"; but Sec. 12 is not.
"Conduct unbecoming a member of the judiciary" has reference not only to the old grounds for impeachment or suspension of public officers, but also to judicial codes of ethics and to modern rules relating to conflicts of interest. The Code of Judicial Conduct, recently adopted by this Court (281 So.2d 21), is a good index to the nature of conduct that is unbecoming of a judge.
The rules this court has adopted for the procedural operation of the Commission in no way bring forward old concepts or precedents relating to timeliness of impeachments and suspension proceedings or limit the Commission to the traditional grounds or processes for impeachment or suspension. They set no time limits upon investigations of judicial conduct.
Insofar as any alleged misconduct of a judge may reasonably be considered to have a pertinent bearing or impact upon the question of his present fitness as a judge, it lies within the jurisdiction of the Commission to make investigation of it unrestrained by time limitations applying to suspensions or impeachments.
While there are no technical absolutes as to the timeliness of Judicial Commission investigations, there are, of course, practicable limitations both overt and subtle on its investigative authority which the native intelligence of reasonable men in keeping with principles of good conscience require the Commission to apply. Many things in the background of a judge remote in time to an investigation should not be "dredged up" for consideration. No investigation should be carried backward in time to the point of capricious ridiculousness. The passage of time and changed environmental or behavioral conditions may have eroded away early acts of misconduct in a judge's life and brought rehabilitative and redemptive processes to bear, completely reforming his character.
Shakespeare wrote: "They say best men are moulded out of faults. And, for the most, become much more the better for being a little bad."
The Commission should never be unmerciful or Draconian. Nor should it take a Pecksniffian or crusading stance. Pecadillos of a judge should be ignored by the Commission unless they cumulatively reflect upon the present quality of his judicial service or render him an object of disrespect and derision in his role to the point of ineffectiveness. A juvenile crime of a judge, long forgotten in the public mind; a remote crime that a judge allegedly committed and for which he was not prosecuted or was acquitted hardly should trouble the Commission years after the fact. Even where a judge has been recently charged with a crime but has been acquitted by a jury, the Commission should be very careful in essaying an inquiry into the underlying elements of the alleged crime. Due respect by the Commission for the *622 jury's verdict as an end of the matter should be accorded unless aggravating circumstances are involved that appear to have an unredeeming impact upon the judge's character that require the Commission to go behind the jury's verdict.[2]
Where unbecoming or corrupt conduct is charged to a judge, the evidence to substantiate the charge should be by clear proofs and something more than mere preponderance.[3]
It is my understanding the Commission's practice is not to concern itself with trifles or "mares' nests" or unsubstantiated charges against a judge or to allow its authority to be used for the venting of spleen of disappointed litigants or special groups with an axe to grind.
The Commission has not been an instrument of oppression  it has not allowed itself to become a lever of any special group or interest to threaten the independence of Florida judges. The fear that "silk stocking" elements of the Bar and Bench through the medium of the Commission would ride herd upon highly independent judges has not materialized, with the one possible exception of Judge Kelly's case.[4]
Despite the implicit or tacit limitations which good conscience impose upon the Commission, it has the duty to take into account any serious and obvious misconduct of a judge that reasonably has a pertinent bearing upon his present fitness as a judge. As before indicated, the time of origin or occurrence of the misconduct does not necessarily exclude investigation. If the alleged misconduct of a judge reasonably has a germane nexus to or bearing upon his judicial character or likelihood of possible adverse effect upon the quality of his service, it may be considered by the Commission. Within the nature of things there may be a carry-over deleterious effect upon a judge's character from former acts of misconduct, as the following examples will illustrate.
Where a judge prior to assuming office has become a thrall to organized criminal or subversive elements or any special interest group through accepting gratuities or favors so that he stands in a position of doubtful loyalty to justice or in constant fear of exposure or public disgrace, his character and fitness as a judge may be jeopardized to the point of discipline.
Where a judge prior to assuming office knowingly violates the election laws[5] and does not disclose illegal campaign contributions, he renders himself suspect as a fit judge and well may have placed himself beyond the pale of judicial propriety.
Where a judge harbors the secret knowledge of a crime he has committed  one of serious proportions; possibly acceptance of a bribe while holding another office or embezzlement of trust funds of a client while he was a practicing attorney, or some other reprehensible undisclosed act violative of the lawyers' professional code of ethics  he may be subject to investigation upon disclosure of such conduct to the Commission, even though the statutes of limitations on the criminal acts have run or impeachment or suspension would not lie.
Of course, however, old or remote acts of misconduct should not be given fresh impetus for disciplinary action against a judge if there is clear evidence that his character has reformed; that there is nothing to warrant he has not afterwards lived a sober, law-abiding life and there appears no evidence of reversion or regression to bad character.
In human behavior it is not true that the leopard cannot change his spots. History is strewn with numerous examples from St. Paul downward of sinners' redemptions. *623 Nevertheless, if from the totality of the circumstances relating to a judge's character there is strong reason to infer from previous misconduct that he has present weakness of judicial character and possible predilection to corruptive influences, the Commission should take the same into account. But in the nature of things few men are so vile as to be beyond redemption or reform or bear ineradicable taint.
Judges should not be made so timorous by the existence of the Commission and its administration that they have almost to be priests fearful to exercise the privileges and independence of free men guaranteed citizens by the Constitution. "Holier than thou" critics should not be able to seize upon small faults or remote acts of misconduct and blow them out of all proportion and emasculate a judge's power of honest independence to do justice fearlessly under the Constitution. No harsh "sword of Damocles" or constant threat of nitpicking discipline should render a judge afraid of his shadow. Only the judge of proven unmistakably bad character or venal or corrupt tendency[6] should have reason to fear.
I do not believe a writ of prohibition or an "all writs" rule should issue in Judge Turner's case. It may well be that if Judge Turner is recommended for discipline the jury's acquittal verdict in his case would absolve him in this Court's judgment. However, for the reasons stated I believe that in Judge Turner's matter any relevant acts of alleged misconduct on his part that occurred prior to his assuming the office of Circuit Judge can be investigated by the Commission and especially those that may have occurred while he was Criminal Court of Record Judge of Dade County, Florida. The alleged acts of misconduct charged to him are said to have occurred only some nineteen months ago when he was Criminal Court of Record Judge of Dade County. He became a Circuit Judge of the Eleventh Judicial Circuit in January of 1973.
Under the scheme of Revised Article V, criminal courts of record were abolished and their former jurisdictions merged into the circuit courts and county courts, creating a two trial court system. Because of this change in the system eliminating his former judgeship, Judge Turner sought and was elected circuit judge to one of the circuit judgeships in Dade County in the new two-tier system. His background and qualifications as a criminal court of record judge were consequently important factors taken into account by the electorate in promoting him to the circuit court. In view of these considerations it is hardly reasonable to contend that his conduct as criminal court judge is now off limits from Commission inquiry.
To recapitulate, I conclude that under paragraph (e) of Section 12 the power of the Commission to remove and discipline for judicial misconduct is in addition to the power of the Governor to suspend and the Senate to remove or impeach and may be exercised uncontrolled by former precedents and limitations relating to such gubernatorial suspension or legislative removal power. It is made a cumulative power, unrestricted by those limitation precedents.
It is a power to discipline not only for the old grounds of impeachment or suspension but for "other conduct unbecoming a member of the judiciary." Logically this prescription for discipline is not limited to the current term of a judge. It is made broad enough in ambit to reach to the full spectrum of a judge's character and especially conduct of a judge in his judicial capacity, whether in a lower judgeship or in an earlier judicial term.
Any overt act of misconduct having a present rational relation to the nature of a judge's character may be considered subject to the limitations of good conscience before mentioned.
*624 It is unrealistic to hold that alleged acts of misconduct occurring during a preceding term as a criminal court of record judge only some nineteen months ago are barred from Commission consideration. It would cause public dismay and incredulity if the Commission's power is so narrowly construed. Remoteness or time limitation appears to be no excuse in the instant situation although other factors (the jury's verdict in Judge Turner's case, for example) may well have exonerating effect.
There are strong precedents from other jurisdictions which substantiate the position I take. See In re Greenberg (1971), 442 Pa. 411, 280 A.2d 370; Sarishon v. Appellate Division of the Supreme Court (1967), 21 N.Y.2d 36, 286 N.Y.S.2d 255, 233 N.E.2d 276, and see 42 A.L.R.3d 713, et seq. Cf. In re Fudula (1929), 297 Pa. 364, 147 A. 67; Sharpe v. State of Oklahoma ex rel. Oklahoma Bar Ass'n, Okl., 448 P.2d 301; State ex rel. Atty. Gen'l. v. Hasty (1913), 184 Ala. 121, 63 So. 559.
The proper course for this Court to take in its relationship with this constitutional Commission is to await its recommendations on a case-by-case basis and then weigh the same on review according to the merits of each recommendation, developing in the process a body of disciplinary precedential law.
This Court should not precipitously and prematurely intrude in a particular disciplinary case to restrain in advance an investigation of a judge. This is contrary to the intent of Section 12 and to the rule of law applicable in disciplinary cases involving public officers. This Court would never undertake to restrain in advance of final action the Governor or the Legislature in the exercise of their disciplinary processes against public officials, although the Court might invalidate the action finally taken. Neither should it interfere with the Commission at this stage of the Judge Turner investigation.
Section 12 is a new approach to the judicial disciplinary problem differing from the old methods of impeachment and suspension. It should not be emasculated by narrow, restrictive precedents which are not expressly written into it. Each disciplinary case should follow the routine of dismissal or recommendation without advance intervention and suppression by this Court.
I would dismiss the petition.
BOYD, J., concurs.
BOYD, Justice (dissenting).
I respectfully dissent.
I am fully aware of the legal authorities cited in the very able majority opinion, but I feel that this case must be decided purely upon the provisions of Section 12 of Article V of the Constitution of the State of Florida, F.S.A., establishing the Judicial Qualifications Commission, particularly subsection (d) thereof, which provides:
"(d) Upon recommendation of two-thirds of the members of the judicial qualifications commission, the supreme court may order that the justice or judge be disciplined by appropriate reprimand, or be removed from office with termination of compensation for willful or persistent failure to perform his duties or for other conduct unbecoming a member of the judiciary, or be involuntarily retired for any permanent disability that seriously interferes with the performance of his duties. After the filing of a formal proceeding and upon request of the commission, the supreme court may suspend the justice or judge from office, with or without compensation, pending final determination of the inquiry."
There is no provision in the foregoing section limiting the time of consideration of misconduct to the specific term of office being held by the judge then under investigation by the Judicial Qualifications Commission. Inter alia, grounds for removal are "conduct unbecoming a member of the judiciary, or ... any permanent *625 disability that seriously interferes with the performance of his duties... ." There is simply nothing in Section 12 stating that the misconduct or disability must occur or arise from acts committed during the current term of office of the judge under investigation.
Webster's Unabridged Dictionary defines misconduct as follows: "[M]ismanagement esp. of governmental or military responsibilities ... intentional wrongdoing; deliberate violation of a rule of law or standard of behavior esp. by a government official... ." The definition further specifically makes reference to misconduct of governmental officials; and, said definition further gives examples of specific cases of judicial misconduct and improper behavior.
The same dictionary also defines disability, inter alia, as follows: "[D]eprivation or lack esp. of physical, intellectual, or emotional capacity or fitness ... a particular weakness or inadequacy ... or condition that incapacitates in any way ... a ... condition that hinders, impedes or incapacitates... ."
When the people of Florida voted to adopt this Constitutional amendment, they were given the opportunity to read the language of the Constitution stated above, and to anticipate that, in construing said language, judges would give it the meaning normally understood and expressed in Webster's Unabridged Dictionary. Since the Constitution does not specifically limit the time during which an investigation of a judicial officer may occur, the public is entitled to expect that any and all misconduct and disability committed at any time by a judge or justice could be a proper subject for a Judicial Qualifications Commission investigation. Applying the normal use of the word "misconduct" in the Constitution, and recognizing that there is no specified limitation on the time, it would seem reasonable to me that the Constitutional intent clearly permits the Judicial Qualifications Commission to consider alleged misconduct of judicial officers committed while holding prior terms of judicial, or any other, public office, and would also empower the Commission to consider misconduct committed at times while not holding public office.[1]
When considering the words "misconduct" and "disability" mentioned above, one could easily determine that if a judge, while in office, should be exposed as a person whose previous conduct was of such shocking and improper nature as to erode public confidence in such person as a judge, and otherwise eliminate public respect for such person as a judicial officer, the judge or justice could become so ineffective as to deserve removal from the office. This, surely, was the intention of the people in adopting this Constitutional provision.
*626 It is presumed that the Judicial Qualifications Commission, and the Supreme Court, will give a common sense application to the Constitutional provisions and would not embarrass a judicial officer by holding him up to public ridicule because of some minor departure from the "straight and narrow paths of righteousness" committed in the long distant past and having no practical relationship to his present capacity to hold office.
It is well known that persons seeking admission to practice law in the State of Florida must present "the entire story of their lives," admitting any and all misconduct, and are carefully investigated from the time of their birth until the date of their admission to the Bar. Surely, by the above mentioned Constitutional provision, the people of Florida did not intend to create a lower standard of ethical conduct for judges than is required for lawyers practicing before, and being subject to, disciplinary action by the Courts.
I take notice that Judge Jack M. Turner has been tried and acquitted of criminal charges relating to the matters being investigated by the Judicial Qualifications Commission at this time. My views expressed herein neither favor nor disfavor the standing of Judge Turner as an individual. I limit my views solely to the question of the area and time in which the Judicial Qualifications Commission may investigate alleged misconduct of a judicial officer.
While I am keenly aware that Judge Turner was tried and acquitted by a Circuit Court Jury for the same misconduct on which the Judicial Qualifications Commission now seeks to act, it must be noted, however, that to convict a person of a crime, the jury must find that person to be guilty beyond and to the exclusion of a reasonable doubt; a different standard  a lower standard  based upon the greater weight of the evidence, is used by the Judicial Qualifications Commission. Thus, the Commission might technically be qualified to investigate and recommend removal or reprimand of a judge who had been acquitted in Criminal Court if the Commission found that the evidence contained a basis for reprimand or removal. Again, I strongly emphasize that I express no opinion herein on the integrity, ability, or guilt of Judge Turner.
The three branches of government are intended to be equal. Regardless of how capable, honest, sincere and dedicated those serving in executive and legislative offices may be, the form of government now existing in this country could not stand without courts of justice operated by persons of high integrity, dedication, and legal knowledge. I believe that in adopting the above Constitutional provisions, the people of Florida intended to create a system by which the Judicial Qualifications Commission and the Supreme Court could quickly deal with judges unworthy of their offices and have them replaced by people meeting the highest ethical standards. The Courts constitute the principal and ultimate shield against tyranny and oppression. In my opinion, today's majority decision is not in the spirit of the people's intent. Those who cannot stand the bright light of public scrutiny should not hold judicial offices.
ERVIN, J., concurs.
NOTES
[1] Article V, Section 3(b)(4), Florida Constitution (1973), F.S.A., provides: "May issue writs of prohibition to courts and commissions in causes within the jurisdiction of the supreme court to review, and all writs necessary to the complete exercise of its jurisdiction."
[2] Article V, Section 12(d), Florida Constitution (1973), F.S.A., provides: "Upon recommendation of two-thirds of the members of the judicial qualifications commission, the supreme court may order that the justice or judge be disciplined by appropriate reprimand, or be removed from office with termination of compensation for willful or persistent failure to perform his duties or for other conduct unbecoming a member of the judiciary, or be involuntarily retired for any permanent disability that seriously interferes with the performance of his duties. After the filing of a formal proceeding and upon request of the commission, the supreme court may suspend the justice or judge from office, with or without compensation, pending final determination of the inquiry."
[3] See Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967), DeGroot v. Sheffield, 95 So.2d 912 (Fla. 1957).
[4] As created by Article V, Section 12, Constitution of Florida, as amended 1973, F.S.A.
[5] The commission cites as additional authority for the proposition that removal may be had for misconduct in a previous office the decision of the Court on Judiciary of Oklahoma in Sharpe v. State of Oklahoma ex rel. Oklahoma Bar Assoc., Okl., 448 P.2d 301. However, in that case the court pointed out that a specific statutory provision enacted by the Oklahoma Legislature in 1955, 22 O.S. 1961, § 1181.1, relating to removal of officers in general, which specifically provides: "Removal for acts of commission, omission, neglect.  All elective officers in the State of Oklahoma, including elective officers of the State and elective officers in each County, City, Town or School District of the State of Oklahoma, but excluding any elective officers liable to impeachment, shall be subject to removal from office in such manner and for such causes as now provided by law, or as may be provided by law passed subsequent to this Act, and any such officer or officers may be removed or ousted from office for any act or acts of commission or omission or neglect which may be committed, done or omitted during the term in which such ouster or removal proceedings may be filed, and any such officer or officers, may be removed or ousted from office for any act or acts of commission, omission, or neglect committed, done or omitted during a previous or preceding term in such office. Laws 1955, p. 200, § 1." The people of Oklahoma adopted Article 7-A, Constitution of Oklahoma, May 3, 1966, which created a "Court on the Judiciary." Section 1, thereof provides: "Removal of judges from office  Compulsory retirement  Causes  (a) In addition to other methods and causes prescribed by the Constitution and laws, the judges of any court, exercising judicial power under the provisions of Article VII, or under any other provision, of the Constitution of Oklahoma, shall be subject to removal from office, or to compulsory retirement from office, for causes herein specified, by proceedings in the Court on the Judiciary. (b) Cause for removal from office shall be: Gross neglect of duty; corruption in office; habitual drunkenness; commission while in office of any offense involving moral turpitude; gross partiality in office; oppression in office; or other grounds as may be specified hereafter by the legislature." (emphasis supplied)
[6] The following excerpts from this material is pertinent:

"It will be seen from a few illustrations that it hardly could have been the intendment of the Constitution that an officer could be impeached for a crime committed by him before his entry into the office from which he is to be removed because, if this were so, there is no constitutional, and, thus far, no legal limitation as to the time during which he may be held so amenable to such impeachment.
"...
"Your committee have been unable, from their investigation, to find warrant for this assertion. We have already shown that all the precedents under the Constitution show impeachments to have been for acts done in the very office from which the accused was sought to be removed. We are unaware that there is any case to the contrary in the later decisions in England, or in any States of the Union, and we grieve that the committee, for whom we have so high a respect, have not seen fit to give authority to the House for this so grave and important a proposition of constitutional laws.
"...
"We submit, with some confidence, that the House might expel an insane man, because it might not be safe or convenient for the House to have him within the legislative hall. The can also clearly expel a man for disorderly proceedings in the body, or for such acts outside of the body as render it at the time manifestly improper for him to be in the House. But your committee are constrained to believe that the power of expelling a member for some alleged crime, committed it may be years before his election, is not within the constitutional prerogative of the House. "We do not overlook the argument presented by the learned committee, upon whose report we are observing, by the phrase: Every consideration of justice and sound policy would seem to require that the public interests be secured and those chosen to be their guardians be free from pollution of high crimes, no matter at what time that pollution had attached.
"But the answer seems to us an obvious one that the Constitution has given to the House of Representatives no constitutional power over such considerations of `justice and sound policy' as a qualification in representation. On the contrary, the Constitution has given this power to another and higher tribunal, to wit, the constituency of the member. Every intendment of our form of government would seem to point to that. This is a Government of the people, which assumes that they are the best judges of the social, intellectual, and moral qualifications of their Representatives whom they are to choose, not anybody else to choose for them; and we, therefore, find in the people's Constitution and frame of government they have, in the very first article and second section, determined that `the House of Representatives shall be composed of members chosen every second year by the people of the States,' not by Representatives chosen for them at the will and caprice of members of Congress from other States according to the notions of the `necessities of self-preservation and self-purification' which might suggest themselves of the reason or caprice of the members from other States in any process of purgation or purification which two-thirds of the members of either House may `deem necessary' to prevent bringing `the body into contempt and disgrace.'
"Your committee are further emboldened to take this view of this very important constitutional question, because they find that in the same section it is provided what shall be the qualifications of a Representative of the people, so chosen by the people themselves. On this it is solemnly enacted, unchanged during the life of the nation, that `No person shall be a Representative who shall not have attained the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that State in which he shall be chosen.'
"Your committee believe that there is no man or body of men who can add to or take away one jot or title of these qualifications. The enumeration of such specified qualifications necessarily excludes every other. It is respectfully submitted that it is nowhere provided that the House of Representatives shall consist of such members as are left after the process of `purgation and purification' shall have been exercised for the public safety, such as may be `deemed necessary' by any majority of the House. The power itself seems to us too dangerous, the claim of power too exaggerated, to be confided in any body of men; and, therefore, most wisely retained in the people themselves, by the express words of the Constitution.
"...
"Who, then, will dare assert that for offenses committed ten years ago, yea, five years, or one year ago, before the election of a member the House has power to expel at its caprice, under a constitutional provision which declares `the House may punish its members for disorderly behavior, and, with the concurrence of two-thirds, expel a member?'"
[7] This precept above explained has been held to apply when statutes or constitution do not specifically provide for disqualification from future office for such misconduct or where they do not specifically provide for going behind previous term. Although not applicable to the instant cause we note that in the 1969 session the Legislature promulgated Chapter 69-277, Laws of Florida, (amended by Chapter 71-333, Laws of Florida), Section 112.42, Florida Statutes, F.S.A., relating to the governor's power to suspend. This section provides: "112.42 Period during which grounds may have occurred.  The governor may suspend any officer on any constitutional ground for such suspension that occurred during the existing term of the officer or during the next preceding four years." The constitutional question as to whether the Legislature can enlarge the suspension power of the Governor as conveyed by Article IV, Section 7, Florida Constitution has not as yet been raised. The constitutionality of this statute which obviously relates only to the Governor's authority to suspend has not been measured against Article IV, Section 7, Florida Constitution, F.S.A., which provides:

"Suspensions, filling office during suspensions.  (a) By executive order stating the grounds and filed with the secretary of state, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony, and may fill the office by appointment for the period of suspension. The suspended officer may at any time before removal be reinstated by the governor. (b) The senate may, in proceedings prescribed by law, remove from office or reinstate the suspended official and for such purpose the senate may be convened in special session by its president or by a majority of its membership. (c) By order of the governer any elected municipal officer indicted for crime may be suspended from office until acquitted and the office filled by appointment for the period of suspension, not to extend beyond the term, unless these powers are vested elsewhere by law or the municipal charter.
[8] In Re Advisory Opinion to the Governor, supra; In Re Advisory Opinion to Governor, supra; State ex rel. Hardee v. Allen, supra; Rosenfelder v. Huttoe, supra; and State ex rel Hawthorne v. Wisehart, supra.
[9] The statute of limitations on crimes less than capital is two years and this is the rule generally followed by grand juries. This is the nearest thing to a declaration of public policy on the question of a reasonable time for investigation.
[10] "Since the assumption of judicial duties suspends all rights and privileges to engage in the practice of law [Sec. 18, Art. V, Florida Constitution], it should, logically, operate as a suspension of disciplinary procedures designed simply to ensure that such rights and privileges shall not be exercised by one who has shown himself unfit to practice law, and not to penalize or punish the offending member. Application of Harper, Fla., 84 So.2d 700, 702, 54 A.L.R.2d 1272."
[1] In re Kelly (Fla. 1970), 238 So.2d 565.
[2] Cf. 3 Fla.Jur., Attorneys at Law § 99. A jury's acquittal may not be a defense.
[3] Cf. The Florida Bar v. Rayman (Fla. 1970), 238 So.2d 594.
[4] See dissent in In re Kelly, 283 So.2d, p. 574 et seq.
[5] See dissent in Maloney v. Kirk (Fla. 1968), 212 So.2d 609, particularly pages 621 and 622.
[6] See In re Kelly, 238 So.2d, pages 578 and 579.
[1] A similar conclusion was reached by the Court of Appeals of New York in Sarisohn v. Appellate Division of Supreme Court, 21 N.Y.2d 36, 46, 286 N.Y.S.2d 255, 262, 233 N.E.2d 276, 281 (1967), wherein the Court held:

"As a general rule conduct of officials prior to their incumbency may not base disciplinary actions against them ... however ... an exception exists as to conduct that may result in debarment from future office. ... Moreover, it has been held that subsequent election to office does not bar charges on undisclosed prior conduct affecting general character and fitness for office... . Nor is it material that the cited cases involved conduct during prior terms for the same office when, as here, the prior office is of the same generic character and carries judicial responsibility. It would be an unseemly and unsound distinction with respect to a matter affecting general character and fitness to immunize a Judge from his prior misconduct as a Judge of lessor or higher rank." (Citations Omitted.) (Emphasis supplied.)
See also In re Greenberg, 442 Pa. 411, 280 A.2d 370 (1971), which held that a conviction, for the federal crime of conspiring to use the mails to perpetrate a fraud, warranted suspension from judicial office, as well as from performance of judicial functions, even if the conduct in question occurred before the judge ascended to the bench.