**DAN D. ROSENFELDER, as Director of Public Safety of the City of Miami, a Municipality of and in Dade County, Florida, and the CITY OF MIAMI, the said Municipality, v. C. O. HUTTOE.**

24 So. (2nd) 108                                             June Term, 1945
December 14, 1945                        .                        En Banc
Rehearing denied January 10, 1945

J. W. Watson, Jr., and John M. Murrell, for appellants.

Vincent C. Giblin, and Robert H. Anderson, for appellee.

TERRELL, J.:

C. O. Huttoe was appointed to the police force (city patrolman) of Miami in November, 1930, in January, 1936 he was promoted to the position of Detective, in November, 1936 he was promoted to the position of Detective Sergeant, in July 1940 he was promoted to the position of Detective Lieutenant, which he held till September, 1944, when he was dismissed by the Director of Public Safety. Throughout this tenure, appellee was a member of the classified Civil Service, created by Chapter 10847, Acts of 1925, City charter of Miami.

The dismissal from the service was done after a hearing on charges regularly proferred and duly considered. The

charges that were sustained and on which Huttoe was dismissed were as follows;

"1. That at or about the latter part of April or the early part of May, 1941, you did take part in a political campaign in this, to-wit; that you did state to one, Abe Arnovitz, a candidate for the office of City Commissioner in the election of May, 1941, that in case he was in the Red as to his political expenses you would take care of said expenses.

"2. That at or about April, 1939 you did take part in a political campaign in this, to-wit; that you stated to one, Randolph Railey, candidate for office in the election of May, 1939, that you were a Sergeant of Police and would like to become a Lieutenant and if he was elected he could help you to become a Lieutenant without regard to Civil Service rules and that you could raise a little money for campaign expenses.

"3. That you did at or about six years ago, exact date or time unknown, take part in a political campaign in this, to-wit; you did state to Judge Curry that he was a friend of Robert Williams, who was at that time Mayor of the City of Miami, offering to give said Judge Curry $500.00 for campaign expenses for the said Robert Williams, who at that time was a candidate for Congress from the Fifth Congressional District.

"4. That you did in the early part of 1944 have a conversation with Chief of Detectives, L. O. Scarboro, relative to being appointed head of the Morals Squad and you requested that said Chief of Detectives, L. O. Scarboro, if called as a witness in the case of the former Chief of Police, H. Leslie Quigg, who was on trial before the City Commission, to say that he did not remember the conversation that took place.

"5. That on or about the first part of the year 1941, exact date and time unknown, while you were in command of the Defense Bureau, you did inform Hardy Bryan, Jr., detective working under your command, that Inspector Forrest E. Nelson, Inspector of Police of the City of Miami, Florida, was a deserter from the U. S. Navy and that his true name was Harry Epps and did request that said Hardy Bryan, Jr., spread this rumor among other members of the Police Department."

In December 1944, alternative writ of mandamus was directed to appellants commanding them to cancel and rescind the order dismissing Huttoe from the Division of Police of the department·of Public Safety and to restore his compensation for the period of his suspension. A motion to quash the alternative writ was·overruled, answer was filed, a motion for peremptory writ notwithstanding the answer was granted and this appeal was prosecuted.

Under Section 25 of the City Charter, the Chief of Police is authorized to suspend any officer or employee in his division for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders given by proper authority, or for any other just or reasonable cause, and the Director of Public Safety is authorized to investigate the cause of suspension and after hearing, render judgment thereon which may be a reprimand, fine, suspension, reduction in rank or·dismissal from the service. His judgment in every case shall be final.

Section 69 of the City Charter prohibits those holding positions in the classified service from taking part in any political campaign further than to cast his vote or express his opinion privately. Charges one, two or three are predicated on violation of these provisions of the City Charter, so as to them the question presented is whether or not they or any of them are sufficient as jurisdictional grounds for disciplinary action on the part of the Chief of Police and Director of Public Safety.

The most that can be said of charges one, two and three is that Huttoe offered to contribute to, or raise money for the support of the campaign of the three gentlemen named in the charges who were at the time candidates for office in Miami. The offer was rejected in each case, so at best nothing more was done than to express a willingness to contribute to the candidate's campaign fund. If he had been a candidate for governor or any other state or federal office, under the Corrupt Practices Act the offer would have been authorized, the one to whom it was offered could have legally and in good grace accepted it without stigma being attached to the person who made the offer or the one who accepted it. Under such a

state of facts we must decline to hold that the mere offer to contribute to a campaign fund is tantamount to taking part in a political campaign. Certainly when in harmony with approved legislative policy it should not warrant removal from office.

To approve a contribution or an offer to contribute to a campaign slush fund may not blend with refined moral concepts. It is also out of step with the concept of the law imparted in law schools. In the law school we were told that law is "the witness and external deposit of our moral life," and the "practice of it, in spite of popular gests, tends to make citizens and good men," that the history of it was the "history of the moral development of the race," but the legislature for weal or woe, may bend these concepts and when it does, courts and administrative officers may still make wry facts at the sin, but they may not condemn the sinner. Neither is it competent for administrative officers, by rule or otherwise to unduly restrict one's activity in a political campaign. Commerce in political opinion is essential to democratic government, and even though one be a candidate for office he cannot be required to poke his head down a hollow log to express any political opinion he may generate.

The City Charter does not attempt to define what constitutes taking part in a political campaign such as it purposes to inhibit. Some practices the legislature may unquestionably forbid, but when it does it must provide a yard stick to measure them by. It cannot leave that to the unbridled discretion of those who would tar and feather any who dared oppose them. Freedom of suffrage and political expression are as essential as freedom of the press. From a standpoint of finesse, appellee's approach may have been crude and subject to criticism, but in law we find nothing to warrant the judgment imposed on him.

Aside from this we think there is another good and valid reason why the city cannot assert its power to remove appellee for the grounds stated in charges one, two and three. The record discloses that they were not raised for more than three, five and six years after they accrued, during which time he had been promoted to another and different

position in the Selective Service which necessitated approval of his past conduct. No rule is better settled under our democratic theory than this: when one is re-elected on re-appointed to an office or position he is not subject to removal for offenses previously committed. Speed v. Common Council of Detroit, 98 Mich. 360, 57 N.W. 406, State ex rel. Gill v. Common Council of Watertown, 9 Wis. 254.

Appellants insist on the other hand that the cause of suspension was a jurisdictional one as contemplated by Section 25 of the City Charter, that appellee was given a full and complete trial by the Director of Public Safety as the charter provides and that since there was evidence to support the suspension, the judgment of the Director of Public Safety is final and the court is not authorized to substitute its judgment therefor.

The answer to this contention is that the court may not always and under all circumstances substitute its judgment for that of the Director of Public Safety, but public position and the emoluments thereof is property that one may not be deprived of without due process, and being so it is competent for the court to determine whether jurisdictional charges were brought against the accused and whether or not the requirements of the City Charter, preliminary to the suspension, were complied with.

The fourth charge has to do with an alleged suggestion by appellee to the Chief of Detectives of the City of Miami to the effect that he, Chief of Detectives, suffer a lapse of memory when called on to testify in a certain trial of the Chief of Police by the City Commission.

This charge deals with suggestions that may have been made in earnest or in jest, at any rate no reversible error is shown.

The fifth charge has to do with a suggestion by appellee that he request a subordinate officer on the police force to circulate among the members of the police department information that Forrest E. Nelson, a superior officer in the department, was a deserter from the United States Navy and was parading under an assumed name.

The record discloses that all these suggested allegations about the companion officer were true. It may not have been a benevolent act to advise their circulation, but even if that had been done it would not constitute ground for suspension from office, since they were not false or under the ban of the city charter.

The evidence in support of some of these charges is by no means convincing, but since we hold them insufficient for other reasons it is unnecessary to discuss the evidence. Under our system of jurisprudence, depriving one of his substance, whether it be lands or chattels or public position is a serious matter and should not be permitted, except under strict requirement of the law when due process is observed.

The judgment appealed from was correct and is affirmed.

CHAPMAN, C.J., BUFORD, THOMAS and ADAMS, JJ., concur.

BROWN and SEBRING, JJ., concur in conclusion.