336 So.2d 97 (1976)
In re ADVISORY OPINION TO THE GOVERNOR REQUEST OF JULY 12, 1976.
No. 49811.
Supreme Court of Florida.
July 30, 1976.
Donald M. Middlebrooks, Gen. Counsel, Orlando, and Algia R. Cooper, Asst. General Counsel, Tallahassee, for Reubin O'D. Askew, Governor.
William L. Durden and Lacy Mahon, Jr., Jacksonville, for Hans G. Tanzler, Jr.
Dawson A. McQuaig, Gen. Counsel, and William Lee Allen, Asst. Counsel, Jacksonville, for City of Jacksonville.
Edward P. Vieira, in pro. per.
 The Honorable Reubin O'D. Askew
 Governor
 State of Florida
 The Capitol
 Tallahassee, Florida 32304
Dear Governor Askew:
We have the honor to acknowledge your communication of July 12, 1976, requesting our advice pursuant to Section 1(c), Article IV, Florida Constitution, 1968 Revision, and Rule 2.1(h), Florida Appellate Rules, relating to certain executive powers and duties.
Your letter reads in part as follows:
"I have been advised that the Duval County Grand Jury has returned indictments alleging commission of a felony and two misdemeanor offenses by the Mayor of the City of Jacksonville, Hans G. Tanzler, Jr.

*98 "Jacksonville operates under a charter form of government which vests certain powers in local officials. Questions have arisen in my mind concerning my constitutional duties relating to the suspension of local elected officials under consolidated government in Jacksonville as well as my authority to appoint an interim Mayor should my decision be to suspend Mayor Tanzler.
* * * * * *
"In view of the above circumstances affecting my executive powers and duties, I therefore submit the following questions for your consideration:
"1. Should the Mayor of Jacksonville be regarded as a municipal officer or a county officer for purpose of Article IV, Section 7 suspension and appointment or can the Mayor be suspended under both § 7(a) and (c)?
"2. If Article IV, Section 7(c) which authorizes suspension of a municipal official indicted for a crime is controlling, must the indictment be a result of actions arising directly or indirectly out of or pertaining to official conduct or duties or is § 112.51(1) an unconstitutional limitation on the constitutional duties of the governor under Article IV, Section 7(c)?
"3. Does § 112.42, F.S. represent an invalid limitation upon the governor's authority to suspend under Article IV, Section 7 or may the governor suspend for conduct which takes place in prior terms but which may affect the officers [sic] capacity to conduct his office?
"4. If the Mayor of Jacksonville should be suspended pursuant to either section of Article IV, Section 7, what procedure should be utilized to fill the vacancy which would be created by such suspension?"
Upon receipt of your communication, an Interlocutory Order was entered, announcing that the questions propounded were answerable and setting dates for filing of briefs and oral argument.
We will respond to your questions in order of their submission.
Question 1: "Should the Mayor of Jacksonville be regarded as a municipal officer or a county officer for purpose of Article IV, Section 7 suspension and appointment or can the Mayor be suspended under both § 7(a) and (c)?"
It is our opinion that you as Governor have authority to suspend the mayor of the consolidated government of the City of Jacksonville under the provisions of Article IV, Section 7(a), of the Florida Constitution, 1968 Revision, provided you find the existence of a ground for removal as set forth in Section 7(a), which are limited to:
1. Malfeasance,
2. Misfeasance,
3. Neglect of duty,
4. Drunkenness,
5. Incompetence,
6. Permanent inability to perform his official duties, or
7. Commission of a felony.
By virtue of this conclusion we are of the opinion that you are without authority to suspend the mayor of Jacksonville as a municipal official under the provisions of Article IV, Section 7(c).
Some officers of the consolidated government carry out both county and municipal functions. Article IV, Section 7(a), relates to the suspension of county officers and provides:
"By executive order stating the grounds and filed with the secretary of state, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony, and may fill the office by appointment for the period of suspension. The suspended officer may at any time before removal be reinstated by the governor."
Article IV, Section 7(c), relates to the suspension of municipal officials and provides:
"By order of the governor any elected municipal officer indicted for crime may be suspended from office until acquitted and the office filled by appointment for the period of suspension, not to extend *99 beyond the term, unless these powers are vested elsewhere by law or the municipal charter." [Emphasis supplied]
This provision grants to the Legislature the authority to vest elsewhere by legislative act the suspension power over municipal officials. The Legislature recognized the unique nature of consolidated governments and the fact that some officials of such governments function as both county and municipal officials by enacting Section 112.49, Florida Statutes, which provides:
"In the administration of any city-county merger or city-county charter, or any such form of government which provides for the merging of the powers, duties and functions of any municipal and county governments, any officer, official or employee of such merged government who exercises the powers and duties of a county officer, whether he shall be elected or appointed, shall be deemed to be a county officer and therefore subject to the power of the governor under the state constitution to suspend officers. If the charter or other authority under which any city-county merger is accomplished shall provide means for the suspension or removal of such officers, then the power to suspend shall be concurrent in the city-county government and in the governor."
Inasmuch as the Legislature has power to create, alter, and abolish both counties and municipalities, we believe it was well within the legislative power to enact Section 112.49, defining what a municipality is and what a county is, for suspension purposes. An examination of Jacksonville's charter leads us to conclude that the mayor of the consolidated City of Jacksonville has "the powers and duties of a county officer," Section 112.49, supra, and should be treated as a county officer, if he is to be suspended. The grounds for suspension of county officers are set forth in Article IV, Section 7(a), of the Florida Constitution. Section 7(c), pertaining to municipal officers, is not applicable.
Question 2: "If Article IV, Section 7(c) which authorizes suspension of a municipal official indicted for a crime is controlling, must the indictment be a result of actions arising directly or indirectly out of or pertaining to official conduct or duties or is § 112.51(1) an unconstitutional limitation on the constitutional duties of the governor under Article IV, Section 7(c)?"
We need not answer this question in view of our answer to question one.
Question 3: "Does § 112.42, F.S. represent an invalid limitation upon the governor's authority to suspend under Article IV, Section 7 or may the governor suspend for conduct which takes place in prior terms but which may affect the officers [sic] capacity to conduct his office?"
To answer this question would require this Court to pass on the legal sufficiency of the individual charges contained in the indictments in this cause. It is our opinion that such a determination should not be made an advisory opinion but should be resolved in regular trial and appellate proceedings where appropriate factual issues can be developed.
We, therefore, decline to answer question three.
Question 4: "If the Mayor of Jacksonville should be suspended pursuant to either section of Article IV, Section 7, what procedure should be utilized to fill the vacancy which would be created by such suspension?"
In our opinion, you may appoint an interim replacement in the same manner as you would any other county official in accordance with the provisions of Article IV, Section 7(a).
 Respectfully,
 (s) BEN F. OVERTON 
 Chief Justice
 (s) JOSEPH A. BOYD, Jr. 
 Justice
 (s) ALAN C. SUNDBERG 
 Justice
 (s) JOSEPH W. HATCHETT 
 Justice
*100 ENGLAND, J., took no part in the consideration of this case.
BOYD, Justice (concurring specially).
I agree with, and have signed, the Advisory Opinion to Your Excellency. Justice B.K. Roberts has stated that almost without exception public officials have not been subjected to disciplinary action for conduct occurring in prior terms of office. The one known exception to that rule is cited in your pleadings to this Court and is referred to as In re Boyd, 308 So.2d 13. The holding in that case conflicted with the majority opinion stated in State ex rel. Turner v. Earle, 295 So.2d 609, and other prior cases decided by the regular members of the Supreme Court of Florida. The Boyd case was decided by a special panel of judges who were on temporary assignment to this Court, and the holding conflicted with precedents previously established by this and other Courts. It should be further noted that a Select Committee of the Florida House of Representatives held extensive hearings and found no basis for disciplinary action by the Legislature against Boyd.
I respectfully submit this information to you as Governor only to assist you in considering the question of law raised by Justice Roberts.
 (s)JOSEPH A. BOYD Jr. 
 Justice
ROBERTS and ADKINS, Justices (dissenting).
In response to your preliminary inquiry as to the status of Mayor Tanzler as a municipal officer or a county officer, upon examination of the pertinent constitutional authority and decisions of the courts, we must conclude that insofar as the instant cause is concerned, Mayor Tanzler is a municipal officer. Article VIII, Section 9, Florida Constitution (1885), carried forward in full force and effect by Article VIII, Section 6(e), provides:
"§ 9. Legislative power over city of Jacksonville and Duval county.  The Legislature shall have power to establish, alter or abolish, a Municipal corporation to be known as the City of Jacksonville, extending territorially throughout the present limits of Duval County, in the place of any or all county, district, municipal and local governments, boards, bodies and officers, constitutional or statutory, legislative, executive, judicial, or administrative, and shall prescribe the jurisdiction, powers, duties and functions of such municipal corporation, its legislative, executive, judicial and administrative departments and its boards, bodies and officers; to divide the territory included in such municipality into subordinate districts, and to prescribe a just and reasonable system of taxation for such municipality and districts; and to fix the liability of such municipality and districts. Bonded and other indebtedness, existing at the time of the establishment of such municipality, shall be enforceable only against property theretofore taxable therefor. The Legislature shall, from time to time, determine what portion of said municipality is a rural area, and a homestead in such rural area shall not be limited as if in a city or town. Such municipality may exercise all the powers of a municipal corporation and shall also be recognized as one of the legal political divisions of the State with the duties and obligations of a county and shall be entitled to all the powers, rights and privileges, including representation in the State Legislature, which would accrue to it if it were a county. All property of Duval County and of the municipalities in said county shall vest in such municipal corporation when established as herein provided. The offices of Clerk of the Circuit Court and Sheriff shall not be abolished but the Legislature may prescribe the time when, and the method by which, such offices shall be filled and the compensation to be paid to such officers and may vest in them additional powers and duties. No county office shall be abolished or consolidated with another office without making provision for the performance of all State duties now or hereafter prescribed by law to be performed by such county officer. Nothing contained *101 herein shall affect Section 20 of Article III of the Constitution of the State of Florida, except as to such provisions therein as relate to regulating the jurisdiction and duties of any class of officers, to summoning and impanelling grand and petit jurors, to assessing and collecting taxes for county purposes and to regulating the fees and compensation of county officers. No law authorizing the establishing or abolishing of such Municipal corporation pursuant to this Section, shall become operative or effective until approved by a majority of the qualified electors participating in an election held in said County, but so long as such Municipal corporation exists under this Section the Legislature may amend or extend the law authorizing the same without referendum to the qualified voters unless the Legislative act providing for such amendment or extension shall provide for such referendum."
This constitutional provision authorized the Legislature to establish a municipal corporation to be known as the City of Jacksonville. Pursuant to such authority, Ch. 67-1320, Laws of Florida, was promulgated by the Legislature creating the consolidated City of Jacksonville and such act was ratified by the Duval County voters. In Jackson v. Consolidated Gov. of City of Jacksonville, 225 So.2d 497 (Fla. 1969), this Court approving the opinion of the Circuit Court authored by Judge Larkin, explained:
"The Jacksonville Consolidation Amendment is a special provision applying only to Duval County and giving the legislature power at any time to consolidate the county and the cities within it into a municipality."

Being fully mindful of Section 112.49, Florida Statutes, which provides:
"112.49 Persons exercising powers and duties of county officers subject to suspension by governor.  In the administration of any city-county merger or city-county charter, or any such form of government which provides for the merging of the powers, duties and functions of any municipal and county governments, any officer, official or employee of such merged government who exercises the powers and duties of a county officer, whether he shall be elected or appointed, shall be deemed to be a county officer and therefore subject to the power of the governor under the state constitution to suspend officers. If the charter or other authority under which any city-county merger is accomplished shall provide means for the suspension or removal of such officers, then the power to suspend shall be concurrent in the city-county government and in the governor."
it should be noted that sub judice no contention has been made that any county duties or responsibilities are involved. In conclusion as to this question, therefore, the Governor's power of suspension relative to Mayor Tanzler under the existing circumstances arises from Article IV, Section 7(c).
Article IV, Section 7(c), provides:
"(c) By order of the governor any elected municipal officer indicted for crime may be suspended from office until acquitted and the office filled by appointment for the period of suspension, not to extend beyond the term, unless these powers are vested elsewhere by law or the municipal charter."
The proviso language specifically vests the Legislature with the power to abrogate the authority to suspend which is vested in the Governor. It necessarily follows that the Legislature having the full authority to derogate the responsibility of the Governor in this area also has the power to circumscribe said authority which it has done through enactment of Section 112.51(1), Florida Statutes, which provides:
"112.51 Municipal officers; suspension; removal from office. 
(1) When any grand jury shall present or return a true bill against any elected or appointed municipal official as a result of actions of such official arising directly or indirectly out of or pertaining to his official conduct or duties, the governor shall have the power to suspend such municipal official from office. Suspension *102 of such official by the governor shall create a temporary vacancy in such office during suspension."
This statutory provision is not inconsistent with or in conflict with the aforementioned constitutional provision. The questioned indictments and charges contained therein do not relate to official actions arising directly or indirectly out of or pertaining to official conduct or duties as Mayor.
Counsel for Mayor Tanzler accurately points out that had Tanzler been the challenger rather than the incumbent, the cited acts could not have even been attempted to be attributed to his duties as Mayor.
In your request, the questions are anchored to indictments referred to therein. Since the questions thus pose a problem of both law and fact, we must limit this opinion to the factual situation involved in the indictments. It is our opinion and we advise you that the management of campaign financing and matters relating thereto are neither county nor municipal functions, and we must therefore advise you that you are without authority on the present state of the record to suspend Mayor Tanzler.
We are not unmindful that other facts and circumstances set forth by a subsequent proclamation of the Governor in this or some other matter may henceforth establish grounds for removal of Mayor Tanzler, but such facts and circumstances must be dealt with subsequent to this time upon appropriate presentation to this Court.
Insofar as the validity vel non of Section 112.42 is concerned, we refer to this Court's decision in State ex rel. Turner v. Earle, 295 So.2d 609 (Fla. 1974), wherein this Court quoted with approval the long established rule of this Court stated by the revered late Justice Terrell in 1945 (Rosenfelder v. Huttoe, 156 Fla. 682, 24 So.2d 108) writing for a unanimous court and the overwhelming majority of other jurisdictions, that "No rule is better settled under our democratic theory than this; When one is re-elected or re-appointed to an office or position he is not subject to removal for offenses previously committed."
Furthermore, the Court said:
"We find that the rule supported by the great weight of authority and specifically adopted by this Court in construing statutory and constitutional provisions authorizing the removal of public officers guilty of misconduct when such provisions do not refer to the term of office in which the misconduct occurred is that a public officer may not be removed from office for misconduct which he committed in another public office or in a prior term of office in the absence of disqualification to hold office in the future because of such misconduct. (See Article VI, Section 4, Florida Constitution 1968, F.S.A.) In Re Advisory Opinion to the Governor, 31 Fla. 1, 12 So. 114 (1893); In Re Advisory Opinion to Governor, 64 Fla. 168, 60 So. 337 (1912); State ex rel. Hardee v. Allen, 126 Fla. 878, 172 So. 222 (1937); Rosenfelder v. Huttoe, 156 Fla. 682, 24 So.2d 108 (1945); State ex rel. Hawthorne v. Wisehart, 158 Fla. 267, 28 So.2d 589 (1946); In re Proposed Disciplinary Action by the Florida Bar Against a Circuit Judge, 103 So.2d 632 (Fla. 1958); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Woods v. Varnum, 85 Cal. 639, 24 P. 843; Speed v. Common Council of City of Detroit et al., 98 Mich. 360, 57 N.W. 406 (1894); Thurston v. Clark, 107 Cal. 285, 40 P. 435 (1895); State ex rel. Schulz v. Patton, 131 Mo. App. 628, 110 S.W. 636 (1908); State ex rel. Attorney General v. Hasty, 184 Ala. 121, 63 So. 559 (1913); State ex rel. Thompson v. Crump, 134 Tenn. 121, 183 S.W. 505 (1916); State v. Scott, 35 Wyo. 108, 247 P. 699 (1926); Jacobs v. Parham, 175 Ark. 86, 298 S.W. 483 (1927); Barham v. McCollum, 174 Ark. 1179, 298 S.W. 484 (1927); Board of Commrs. of Kingfisher County v. Shutler, 139 Okla. 52, 281 P. 222 (1929); Edson v. Superior Court, 98 Cal. App. 367, 277 P. 194; State v. Blake, 138 Okla. 241, 280 P. 833 (1929); In re Fudula et al., 297 Pa. 364, 147 A. 67 (1929); Montgomery v. Nowell, 183 Ark. 1116, 40 S.W.2d 418 (1931); Rice v. State, 204 Ark. 236, 161 S.W.2d 401 (1942); People ex rel. *103 Bagshaw v. Thompson, 55 Cal. App.2d 147, 130 P.2d 237 (1942); State ex rel. Agee et al. v. Hassler, 196 Tenn. 158, 264 S.W.2d 799 (1954); State ex rel. Chitwood v. Murley, 202 Tenn. 637, 308 S.W.2d 405 (1957); People v. Hale, 232 Cal. App.2d 112, 42 Cal. Rptr. 533 (1965); Letcher v. Commonwealth, 414 S.W.2d 402 (Ky. 1966); State ex rel. Stokes v. Probate Court of Cuyahoga County, 22 Ohio St.2d 120, 51 Ohio Ops.2d 180, 258 N.E.2d 594 (1970); Smith v. Godby, 154 W. Va. 190, 174 S.E.2d 165 (1970), 42 A.L.R.3d 675; see also House of Representatives 42nd Cong., 3d Sess., Report No. 81, Inquiry as to Impeachment in Credit Mobilier Testimony as contained in Impeachment, Selected Materials, Committee on the Judiciary, House of Representatives, Ninety-third Congress, First Session, United States Government Printing Office, Washington, 1973."
The following relevant facts are pertinent:

 DATE EVENT
 March 1, 1968 Present Mayor took office as Mayor of the
 Consolidated City of Jacksonville (Section 22.03,
 Chap. 67-1320, Laws of Florida) (A-1-17)
 March 1, 1968 Charter transitional period (Section 22.03, Chap.
 67-1320, Laws of Florida)
 January 4, 1971 Date of alleged perjury, as set forth in indictment
 therefor (A-18-19)
 February 15, 1971 Date of alleged failure to report by, of gifts
 received on December 30, 1970, as set forth in
 indictment therefor (A-19-20)
 July 1, 1971 Present Mayor took office for first full term as
 Mayor of the Consolidated City of Jacksonville
 (A-22-32)
 August 15, 1973 Date of alleged failure to report by, of gifts
 received for period January 1 through June 30, 1973,
 as set forth in indictment therefor (A-33-34)
 July 7, 1975 Present Mayor took office for second full term as
 Mayor of the Consolidated City of Jacksonville
 (A-36-53)

As the City of Jacksonville points out, none of the events set forth in the indictments occurred during the existing term of Mayor and the only indictment covering events occurring in the next preceding four years is failure to report gifts received for the period of January 1 through June 30, 1973, by August 15, 1973, which is a misdemeanor not connected with his duties and responsibilities as Mayor.
Since it would therefore appear that removal at this time is inappropriate as a matter of law, it is unnecessary to give consideration to the fulfilling of a prospective vacancy.
 Respectfully,
 (s)B.K. ROBERTS 
 (s)JAMES C. ADKINS 
ROBERTS, Justice, further dissenting.
An exhaustive study of the National Reporter System and all other available treatises demonstrate a near unanimous rule throughout this nation, both State and Federal, that a public official cannot be removed from office under a current commission for misconduct in a prior one. See numerous precedents cited in the main dissenting opinion. Therefore, I advise you that in my opinion to do so would violate almost unanimous precedent for more than a century. In view of this rule, the other questions presented are moot. I am authorized to say that Justice Adkins joins me in this view.
(s)B.K. ROBERTS