403 So.2d 379 (1981)
Cheryl M. CAULEY and Cecil Cauley, Her Husband, Appellants,
v.
CITY OF JACKSONVILLE, a Body Politic and Corporate, Appellee.
No. 57756.
Supreme Court of Florida.
July 16, 1981.
Rehearing Denied October 2, 1981.
*380 Wayne E. Hogan of Brown, Terrell & Hogan, Jacksonville, for appellants.
Dawson A. McQuaig, Gen. Counsel and William Lee Allen and Donald R. Hazouri, Asst. Counsels, Jacksonville, for appellee.
Joel D. Eaton of Podhurst, Orseck & Parks, Miami, for the Academy of Florida Trial Lawyers, amicus curiae.
Claude L. Mullis, Tallahassee, for Florida League of Cities, Inc., amicus curiae.
OVERTON, Justice.
This is an appeal from a circuit court decision holding constitutional section 768.28(5), Florida Statutes (1977),[1] which by its terms limits the amount of money damages recoverable in tort against a municipality to $50,000 per person and $100,000 per incident.[2] We have jurisdiction,[3] and affirm.
The facts are undisputed. Appellant Cheryl Cauley was injured in an automobile accident allegedly caused when the right front wheel of her automobile dropped from the road surface into a long-existing and dangerous depression in the road shoulder, causing the vehicle to go out of control and collide with another automobile. Mrs. Cauley alleged that the city had knowledge of this dangerous condition and had consequently breached its duty to exercise reasonable care in the repair and maintenance of the roadway and duty to warn of the dangerous condition. A jury assessed Mrs. Cauley's total damages at $400,000 and awarded a $200,000 consortium claim to her husband. The jury found Mrs. Cauley to be seventy-five percent responsible for the accident, and the trial court accordingly reduced the amount and entered a total judgment of $150,000 for the plaintiffs. The city filed a motion to limit the judgment to $100,000 in accordance with section 768.28(5). The trial court granted the motion and expressly found that this statutory section was constitutional.
*381 The question we must decide concerns the validity of that portion of section 768.28(5) which limits compensatory damages against municipalities for negligent performance of operational-level or proprietary functions. The issue is narrow because this Court has previously held constitutional that portion of section 768.28(5) which waives sovereign immunity and establishes a statutory cap for compensatory recovery against the state and county governments for operational-level negligence. Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). Appellants concede the statute's validity as applied to the state and county governments and as applied to those municipal functions which were previously immune.
In answering the instant question, a historical perspective is useful.[4] Sovereign immunity's roots extend to medieval England. The doctrine flows from the concept that one could not sue the king in his own courts; hence the phrase "the king can do no wrong." The United States government fully accepted the sovereign immunity doctrine in Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), in which Chief Justice Marshall declared that no suit could be commenced or prosecuted against the United States without its consent. Id. at 411-12. Later, Justice Holmes explained: "A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907). The majority of American states fully embraced the sovereign immunity theory as well as the federal government. See Restatement (Second) of Torts § 895B, comment a at 400 (1979). Thus the general rule was that state governments, their agencies, and their subdivisions could not be sued in state courts without state consent.
At this point, it should be noted that, although suit against the king did not lie, one injured by the king's ministers could always petition the king directly for relief. In modern time, our legislative bodies are vested with the authority to grant relief for governmental wrongs through waiver of immunity.[5] Congress eliminated immunity in part and granted leave for suit against the United States federal government in 1946. Federal Torts Claims Act, Pub. L. No. 79-601, Ch. 753, 60 Stat. 842 (1946) (current version codified at 28 U.S.C. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412 (1976)). The people of Florida vested the power to waive immunity in the Florida legislature at an early date. See art. IV, § 19, Fla. Const. (1868) (now art. X, § 13, Fla. Const.). The Florida legislature did not exercise this authority until 1973 when it enacted section 768.28. Ch. 73-313, § 1, Laws of Fla.
Common law sovereign immunity for the state, its agencies, and counties remained in full force until section 768.28's enactment. Unlike the state and county governments, however, the case law establishing and construing municipal sovereign immunity has been confusing as a result of inconsistent application. Prior to 1776, the common law doctrine of sovereign immunity applied without distinction between governmental entities. The first generally reported attempt at suit specifically against a local government was in the English case of Russell *382 v. The Men of Devon, 100 Eng.Rep. 359 (1788). In that case, a claim was made against the inhabitants of unincorporated Devon County for injuries resulting from the county's failure to maintain a bridge. The court refused to hold the county liable and specifically stated that no precedent existed for such an action and that it could not be maintained because suit did not lie against the public.[6]Devon became the standard for local government sovereign immunity.
In 1850, the Florida Supreme Court distinguished Devon and its applicability to municipalities in City of Tallahassee v. Fortune, 3 Fla. 19 (1850). The Fortune court determined that the City of Tallahassee could be held liable for a mare which died after falling into a negligently maintained city ditch. The Court based its decision on the City of Tallahassee's corporate fund which was available to pay damages; no fund was available in Devon.
Fortune is the first of a line of Florida decisions which began to except certain municipal activities from the sovereign immunity rule. These cases, while recognizing the doctrine, began to prune away its applicability. Prior to Fortune, other states had reacted to municipal immunity's dissonant effects and, reasoning that municipal corporations were the same as private corporations in some circumstances, bifurcated municipal activities into governmental functions and proprietary or corporate functions. See, e.g., Bailey v. Mayor of New York, 3 Hill 531 (N.Y. 1842). As to the governmental functions, the courts determined that cities remained immune from suit, but, as to proprietary acts, immunity was abolished. Florida accepted this view. Ballard v. City of Tampa, 124 Fla. 457, 168 So. 654 (1936); Brown v. City of Eustis, 92 Fla. 931, 110 So. 873 (1926); City of Orlando v. Pragg, 31 Fla. 111, 12 So. 368 (1893). In turn, a problem soon arose in determining which municipal functions were governmental, and thus immune from suit, and those which were proprietary, and thus not immune. As Florida courts continued to erode away municipal immunity by placing more and more municipal functions into the proprietary category, inconsistencies developed which defied both logic and common sense.[7] Several examples make this clear.
The general rule was that cities could not be held liable for the unlawful or negligent actions of municipal officers. Brown v. Town of Eustis.[8] Thus, a municipality was immune from suit when its police department unlawfully battered an arrestee, City of Miami v. Bethel, 65 So.2d 34 (Fla. 1953), and falsely arrested and imprisoned an arrestee, Kennedy v. City of Daytona Beach, 132 Fla. 675, 182 So. 228 (1938). However, at the same time municipalities were supposedly immune, city police were held accountable for not providing medical aid at the time of an arrest, Britt v. Ocala, 65 So.2d 753 (Fla. 1953), a death-causing fire at a police station, Williams v. Green Cove Springs, 65 So.2d 56 (Fla. 1953), injuries resulting from a police cruiser's defective brakes, City of Avon Park v. Giddens, 158 Fla. 130, 27 So.2d 825 (Fla. 1946), and a prisoner's venereal disease contracted at the *383 city jail, Lewis v. City of Miami, 127 Fla. 426, 173 So. 150 (1937).
Similarly, under the same general rule, municipal fire departments should have been immune. But this Court held that municipalities were liable for damages resulting from a negligently driven fire truck en route to a fire, Maxwell v. City of Miami, 87 Fla. 107, 100 So. 147 (1924); City of Tallahassee v. Kaufman, 87 Fla. 119, 100 So. 150 (1924).
Still another inconsistency was the Court's general rule that cities were liable for damages resulting from the negligent operation and maintenance of city streets and sidewalks. Woods v. City of Palatka, 63 So.2d 636 (Fla. 1953) (pothole in road); City of Miami Beach v. Quinn, 149 Fla. 326, 5 So.2d 593 (1942) (depression in road surface); City of Tallahassee v. Fortune. But a municipality was held immune from damages caused by the negligent maintenance of the grass-covered area between a city sidewalk and street, Kitchen v. City of Jacksonville, 158 Fla. 621, 29 So.2d 441 (1947), and an improperly functioning traffic signal, Avey v. City of West Palm Beach, 152 Fla. 717, 12 So.2d 881 (1943).
This Court recognized the inconsistency and confusion in Florida municipal sovereignty law in Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (1957), where Justice Thornal stated: "The problem in Florida has become more confusing because of an effort to prune and pare the rule of immunity rather than to uproot it bodily and lay it aside as we should any other archaic and outmoded concept. This pruning approach has produced numerous strange and incongruous results." Id. at 132. Justice Thornal's decision, a landmark in this state, receded from the Court's prior decisions delineating municipal functions as governmental or proprietary and liability based thereon, reasoning that "[t]he modern city is in substantial measure a large business institution... ." Id. at 133. The Court warned, however: "We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial functions... ." Id. In addressing the merits of the facts before it, the Hargrove court concluded that the City of Cocoa Beach would have to answer for the negligence of its police department under the respondeat superior doctrine.[9]
After Hargrove, the Court readdressed municipal sovereign immunity in Modlin v. City of Miami Beach, 201 So.2d 70 (1967). The Modlin decision limited Hargrove to situations where a city owed the plaintiff a special duty.
The Fourth District Court of Appeal, in Gordon v. City of West Palm Beach, 321 So.2d 78 (Fla. 4th DCA 1975), subsequently analyzed the status of the law as a result of Hargrove, Modlin, and their progeny as follows:
1) as to those municipal activities which fall in the category of proprietary functions a municipality has the same tort liability as a private corporation;
2) as to those activities which fall in the category of governmental functions "... a municipality is liable in tort, under the doctrine of respondent [sic] superior, [...] only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in contact in a direct transaction or confrontation." City of Tampa v. Davis, Fla.App. 1969, 226 So.2d 450;
3) as to those activities which fall in the category of judicial, quasi judicial, legislative, and quasi legislative functions, a municipality remains immune. Hargrove v. Town of Cocoa Beach, supra; Modlin v. City of Miami Beach, supra.
Id. at 80 (emphasis deleted).
In our recent decision of Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), we recognized the problems and criticisms of the governmental-proprietary *384 and special duty-general duty analyses which had previously encompassed municipal sovereign immunity law. The Court determined that with the enactment of section 768.28 and the legislature's express inclusion of municipalities within that statute, the rules previously governing municipal immunity had been eliminated: "We conclude that Modlin and its ancestry and progeny have no continuing validity subsequent to the effective date of section 768.28." Id. at 1016.
The Commercial Carrier decision further held that section 768.28 had waived county and state governmental immunity, within the set limits, in "operation-level" functions, but that the "planning" or "decisionmaking" levels remained immune. Under the Commercial Carrier facts, a county was held liable for negligence in maintaining the letters "stop" painted on the pavement at a highway intersection, an "operational-level" obligation.
The instant question is whether section 768.28's $50,000/$100,000 cap on municipal liability is valid for the identified proprietary functions for which this Court has previously said there is no sovereign immunity. Appellants contend that the trial court committed five constitutional errors in upholding the legislature's limitation on municipal tort recovery. Specifically, the Cauleys assert that the statute (1) denies them access to courts under the Florida Constitution; (2) violates both the due process of law and equal protection clauses of the United States and Florida Constitutions; (3) denies the right to trial by jury under the Florida Constitution; (4) violates the separation of powers mandate of the Florida Constitution by depriving the courts of jurisdiction over judgments, by transferring judicial powers and duties to the legislative and executive branches, and by prescribing a procedure for the enforcement of judgments contrary to rule 1.570, Florida Rules of Civil Procedure; and (5) deprives the circuit courts of their power under the Florida Constitution to issue writs of mandamus and all writs necessary in the exercise of their jurisdiction. We reject all these contentions.
The qualified power of a legislative body to impose a ceiling on claims recoverable in a court proceeding was expressly upheld in Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). In Duke Power, Congress had limited liability to $560 million for any nuclear accident resulting from federally licensed privately owned nuclear power plants. Similarly, we have previously upheld the legislative authority to establish a workmen's compensation insurance system and a no-fault automobile insurance system, each of which alters and restricts the means of traditional tort recovery. See Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977) (workers' compensation); Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974) (no-fault). Substantially the same constitutional attacks as asserted in the instant case were asserted to defeat each of those legislative schemes and were expressly rejected by this Court.
The subject legislative act has not abolished or unreasonably restricted an individual's cause of action against a municipality. Initially there was no such cause of action and only by court pruning of the sovereign immunity doctrine were some causes of action allowed. In Kluger v. White, 281 So.2d 1 (Fla. 1973), asserted by appellants to mandate full recovery without limitation, we set forth the standard for the legislative elimination of causes of action:
We hold, therefore, that where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method *385 of meeting such public necessity can be shown.
Id. at 4 (emphasis ours).[10] There was no statutory right to recover for a municipality's negligence predating the adoption of the declaration of rights contained in the Florida constitution nor was there a cause of action at common law as of July 4, 1776, adopted under section 2.01, Florida Statutes.[11] Consequently, the strictures of Kluger v. White are not applicable.[12]
In our view, section 768.28, rather than denying equal protection, has in fact brought fairness, equality, and consistency to an area of the law which for over one hundred years has been beset with contradiction, inconsistency, and confusion. Appellants' position is contrary to consistency. The inequities of such view are easily illustrated. In the instant factual circumstance, Mrs. Cauley was injured because a severe drop-off from the road surface to the road shoulder caused loss of vehicle control. Appellants assert that because the accident occurred within the Jacksonville city limits, the statutory cap should not apply and that their recovery should be unlimited. It is conceded, however, that if the accident had occurred from identical road conditions in adjacent unincorporated Clay or Nassau Counties, that the recovery would be limited by section 768.28(5)'s $50,000/$100,000 ceiling; and that, before section 768.28's enactment, no recovery would have been allowable at all. Appellants' argument, in other words, would allow an unlimited recovery in the instant case simply because the road surface was maintained by a municipality rather than a county or by the state.
Another illustration of the inconsistency in appellants' argument is exhibited in the situation where, within municipal city limits, a police officer attempts to make a traffic arrest, but because of defective brakes, the officer's police cruiser causes personal injury to passersby. Under appellant's contention, if the patrolman is a city officer, the injured persons would be allowed an unlimited recovery. However, if the officer was a state trooper making an arrest for the same offense in the same location, immunity would prohibit recovery except as allowed under section 768.28(5). Clearly, the even-handed application of immunity under section 768.28 furthers equal protection of the law under our constitutions rather than denies it.
We note that section 768.28 also furthers the philosophy of Florida's present constitution that all local governmental entities be treated equally. Since 1968, municipal corporations, counties, and school districts have been in constitutional parity with one another and possess equal taxing powers. Art. VIII, Fla. Const. See City of Sarasota v. Mikos, 374 So.2d 458 (Fla. 1979). We also note that our present constitutional scheme allows municipal-county total or partial consolidation as an option for municipal and county governments to provide more efficient services. Art. VIII, §§ 3-4, Fla. Const. If we were to adopt appellants' view that a different immunity standard should apply to a municipal corporation as opposed to a county government, we would next have to determine which standard to apply when consolidation has occurred, because Duval County and the City of Jacksonville have in fact consolidated. See, e.g., In re Advisory Opinion to the Governor Request of July 12, 1976, 336 So.2d 97 (Fla. 1976) (whether municipal *386 or county standards applied to suspension of mayor under consolidated government; county standards held applicable). Our decision that section 768.28 applies to both municipal and county governments eliminates the need for such a determination.
Municipalities can no longer be identified as partial outcasts as opposed to other constitutionally authorized local governmental entities. Our cities currently provide a substantial portion of our public services, funded in part with state and federal revenues. Municipal ordinances are now enforced in state courts by state officials. Cities furnish the majority of our police and safety protection;[13] provide a substantial portion of our public recreational facilities; and maintain a significant portion of public streets. In a similar light, our twenty-three-year-old statement that the "modern city is in substantial measure a large business institution," Hargrove, 96 So.2d at 133, can no longer justify disparate treatment of our municipalities. Many of our metropolitan counties now function in an identical capacity.
The sovereign immunity issue has been regularly before the courts because prohibition against recovery for governmental negligence is harsh and resulted in considerable injustice. Pruning sovereign immunity on a case-by-case basis to offset this factor, however, has itself resulted in inequitable treatment. In this light, some jurisdictions have partially or totally abolished the doctrine.[14]
*387 It is our decision that, in this state, sovereign immunity should apply equally to all constitutionally authorized governmental entities and not in a disparate manner. We find that section 768.28 provides a responsible method for this equal application. While the section does limit recovery allowable against municipalities, it substantially broadens recovery allowable against state governmental entities generally. It is important to note that, although section 768.28 imposes a $50,000/$100,000 ceiling on tort recovery against government in the judicial forum, the section specifically provides that one suffering injuries in excess of the ceiling may seek additional relief by petition to the legislature.[15]
In conclusion, we hold that the statute clearly relates to a permissible legislative objective and is neither discriminatory, arbitrary, nor oppressive in its application. The statute does not violate the right to due process, jury trial, access to the courts, or the separation of powers rule. It provides a fair means of recovery against governmental entities for the negligent acts of their employees and officials.
For the reasons expressed, we affirm the trial court and uphold the constitutional validity of section 768.28(5), Florida Statutes (1977).
It is so ordered.
BOYD, ALDERMAN and McDONALD, JJ., concur.
ENGLAND, J., concurs in result only.
SUNDBERG, C.J., dissents with an opinion in which ADKINS, J., concurs.
SUNDBERG, Chief Justice, dissenting.
I dissent from the majority opinion. In attempting to reach a simple result for a complex problem, the majority has misconstrued case law and blurred traditional distinctions between immunity for state, county and municipal governments.
One such misapplication is the majority's reliance on Commercial Carrier Corp. v. Indian River County.[1]Commercial Carrier dealt with a single narrow issue  the scope of the waiver of sovereign immunity for the state and counties under section 768.28, Florida Statutes (1975). It did not, as the majority asserts, totally abrogate the rules regarding municipal immunity. It merely held that the legislature did not intend for the rules of municipal sovereign immunity to be applicable to the state and counties. Additionally, Commercial Carrier dealt with a waiver of immunity for the state and counties where there had previously been total immunity. Such is not the case here. Municipalities have never enjoyed total immunity in Florida. There is a vast difference in waiving immunity by increasing recovery from nothing to a maximum of $50,000/$100,000, and "creating" immunity by lowering recovery from full compensation to a $50,000/$100,000 limitation. The former is acceptable; the latter is not. Thus, the majority errs in attempting to apply and extend Commercial Carrier to the case before us.
I believe the majority is also mistaken in its application of the principles of Kluger v. White.[2] This case clearly involves a Kluger problem and may be disposed of by reference to its guidelines and holding. Kluger set forth the following standard for the legislative elimination of a cause of action:

*388 We hold, therefore, that where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.[3]
Contrary to the assertion of the majority, there was a cause of action at common law as of July 4, 1776 which was adopted under section 2.01, Florida Statutes (1979).[4] This common law cause of action is expressed in the legal maxim that where an individual sustains an injury by the neglect of another, the law gives him a remedy. The remedy required was full and just compensation. Kluger holds that the legislature may not abolish such rights unless two conditions are met: (1) a showing of "overpowering public necessity for the abolishment of the right"[5] and (2) the absence of any reasonable alternative. It is clear that neither requirement is met in this case. First, there was no necessity shown for the abolition of this common law right by legislative history or findings expressed in the legislation. Second, even if such necessity had been demonstrated, the lack of a reasonable alternative was not shown. The effect of section 768.28(5) is to force a plaintiff to give up a common law right and receive nothing in return. Such a result is contrary to the dictates of Kluger v. White; thus this portion of the statute should be struck down.
The majority attempts to bolster its argument by citing several cases which have upheld restrictions on the means of traditional recovery: Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977); and Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974); Duke Power Company v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). A careful reading of these cases, however, demonstrates that they are distinguishable and, indeed, actually support this writer's view. Halligan involved various aspects of the worker's compensation insurance system. In upholding the limitations on traditional means of recovery, this Court stated: "In the case sub judice, the claimant was ... supplied with an alternative remedy of compensation for injury without regard to proof of negligence ... . This remedy is a reasonable alternative for appellee's relinquishing his right of action against other subcontractors under the then-existing law." 344 So.2d at 244 (emphasis added). Lasky involved certain sections of Florida's no-fault insurance law which altered traditional tort recovery. This Court upheld the alterations, stating that "a reasonable alternative" had been provided because the injured party could recover in certain instances without having to prove fault. Duke Power Company, although a federal case, is distinguishable for similar reasons. First, the Price-Anderson Act, which placed a $560-million limitation on damages arising from a nuclear accident, allowed recovery without proof of fault. Second, the United States Supreme Court found a compelling interest that required a change in the traditional methods of recovery and that the waiver of defenses clause provided a reasonable alternative. An additional distinction between Duke Power Company and the *389 present case is that there is no federal counterpart to Florida's guarantee of access to the courts.[6]Kluger v. White held this section was violated when a common law right of action adopted under section 2.01, Florida Statutes, was abolished without fulfillment of the requirements discussed above. Thus, the majority's reliance on the above cases merely highlights the weakness of its reasoning.
Two final arguments the majority submits in upholding the $50,000/$100,000 cap against municipalities are: (1) section 768.28 makes all governmental entities equal, and (2) to hold otherwise would cause difficulties when dealing with consolidated areas. The first contention is specious. Even if such a result satisfies this Court's sense of symmetry, it is totally unsupported historically or legally. Since the case of City of Tallahassee v. Fortune, 3 Fla. 19 (1850), this Court has recognized the distinction between a municipal corporation and the state and its political subdivisions insofar as liability for tort is concerned. Even though the labels used to identify the activities for which a municipality may be held liable have been less than satisfactory, the principles upon which liability attached to a municipal corporation where none attached to the state have been clear.
With regard to the difficulty of applying the law of municipal tort liability to consolidated entities, I need only respond that difficulty of decision should not be a consideration in determining the proper rule of law in a given situation. Hard cases often make bad law, but they also most often lead to the right result.
In conclusion, I disapprove the majority's construction and application of Commercial Carrier Corp. v. Indian River County to the present case. Furthermore, I would apply the holding of Kluger v. White to the facts of this case and hold the damage limitation of section 768.28(5) unconstitutional as applied to municipalities.
ADKINS, J., concurs.
NOTES
[1] Section 768.28(5) provides:

(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period prior to judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $100,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. The limitations of liability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies and subdivisions possessed sovereign immunity prior to July 1, 1974.
[2] The 1981 Florida Legislature increased the amount recoverable against the state, a county, or a municipality to $100,000 per person and $200,000 per incident. See ch. 81-317, Laws of Fla.
[3] Art. V, § 3(b)(1), Fla. Const. (1972).
[4] For an expansive history of the sovereign immunity doctrine in both England and the United States, see generally 1 W. Blackstone, Commentaries *236; 10 W. Holdsworth, A History of English Law 651 (1938); 1 F. Pollock & F. Maitland, The History of English Law Before the Time of Edward I 511 (2d ed. 1903); Borchard, Government Liability in Tort, 34 Yale L.J. 1 (1924); Jaffe, Suits Against Governments & Officers: Sovereign Immunity, 77 Harv.L.Rev. 1 (1963); James, Tort Liability of Governmental Units & Their Officers, 22 U.Chi.L.Rev. 610 (1955).
[5] Before waiver of sovereign immunity, one suffering injury at the hands of the state could always petition for legislative relief by means of a claims bill. At present, if a claim exceeds the statutory limit, the legislature will still entertain a petition for a claims bill for the excess amount. See §§ 11.065, 768.28(5), Fla. Stat. (1979).
[6] The Devon court cited as authority R. Brooke, LaGraunde Abridgement 93 (1573), a work published more than two centuries before the Devon decision.
[7] Municipal sovereign immunity in Florida and the continuing confusion surrounding it has spawned much comment. See, e.g., Budetti & Knight, The Latest Event in the Confused History of Municipal Tort Liability, 6 Fla.St.L.Rev. 927 (1978); Drake & Oldham, The King Is Dead, Long Live the Emperor: Commercial Carrier Decision & the Status of Governmental Immunity in Florida, 53 Fla.B.J. 504 (1979); Price & Smith, Municipal Tort Liability: A Continuing Enigma, 6 U.Fla.L.Rev. 330 (1953); Seligman & Beals, The Sovereignty of Florida Municipalities: In-Again, Out-Again, When-Again, 50 Fla.B.J. 338 (1976); Note, An Insurance Program to Effectuate Waiver of Sovereign Tort Immunity, 26 U.Fla.L.Rev. 89 (1973); Note, A Statutory Approach to Governmental Liability in Florida, 18 U.Fla.L.Rev. 653 (1966); Note, The Tort Liability of Florida Municipal Corporations, 16 U.Fla.L.Rev. 90 (1963); 18 U.Fla.L.Rev. 173 (1965).
[8] Accord, Bradley v. City of Jacksonville, 156 Fla. 493, 23 So.2d 626 (1945); Phair v. Byder, 155 Fla. 677, 21 So.2d 208 (1945); Gerschwiller v. City of Winter Haven, 95 Fla. 427, 115 So. 846 (1928).
[9] Accord, City of Miami v. Simpson, 172 So.2d 435 (Fla. 1965) (based on Hargrove, municipal liability extended to intentional torts of employees). But cf. Fisher v. City of Miami, 172 So.2d 455 (Fla. 1965) (municipalities not liable for punitive damages).
[10] Accord, Faulkner v. Allstate Ins. Co., 367 So.2d 214 (Fla. 1979).
[11] See Russell v. The Men of Devon, 100 Eng. Rep. 359 (1788); R. Brooke, LaGraunde Abridgement 93 (1573).
[12] We note that the First District Court of Appeal has recently upheld section 768.28 from constitutional attack in Jetton v. Jacksonville Electric Authority, 399 So.2d 396 (Fla. 1st DCA 1981). In addressing the asserted Kluger problem, the court said because section 768.28 merely narrowed the right to sue municipal government rather than abolished it, no constitutional infirmity presented itself. See Abdin v. Fischer, 374 So.2d 1379 (Fla. 1979); McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867 (Fla. 1942).

Our holding that Kluger does not apply because no right existed at common law makes it unnecessary for us to consider the First District's reasoning.
[13] As of 1979, municipal police departments employed 10,606 sworn law enforcement personnel while county sheriff's departments only employed 7,227. State law enforcement personnel are not included in these figures. See [1979] Fla.Dept. of Law Enforcement Ann.Rep., Crime in Florida 218.
[14] Some jurisdictions have abrogated sovereign immunity by judicial fiat. See Stone v. Arizona Highway Comm'n, 93 Ariz. 384, 381 P.2d 107 (1963); Muskopf v. Corning Hosp. Dist., 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961) (immunity currently governed by Cal. [Gov't] Code div 3.6 (Deering 1973)); Proffitt v. State, 174 Colo. 113, 482 P.2d 965 (1971) (immunity reinstated to limited extent by Colo. Rev. Stat. § 24-10 (1973); Campbell v. State, 259 Ind. 55, 284 N.E.2d 733 (1972); Haney v. City of Lexington, 386 S.W.2d 738 (Ky. 1964) (municipal immunity abolished based on Hargrove); Board of Comm'rs v. Splendour Shipping & Enterprises Co., 273 So.2d 19 (La. 1973) (subsequently reabolished by La.Const. art. XII, § 10); Davies v. City of Bath, 364 A.2d 1269 (Me. 1976); Nieting v. Blondell, 306 Minn. 122, 235 N.W.2d 597 (1975); Jones v. State Highway Comm'n, 557 S.W.2d 225 (Mo. 1977); Brown v. City of Omaha, 183 Neb. 430, 160 N.W.2d 805 (1968); Johnson v. Municipal Univ. of Omaha, 184 Neb. 512, 169 N.W.2d 286 (1969) (immunity currently governed by Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 to -8,239 (1976)); Merrill v. City of Manchester, 114 N.H. 722, 332 A.2d 378 (1974) (municipal immunity abolished, citing Hargrove, with leave for the legislature to limit recovery); Willis v. Department of Conservation & Economic Dev., 55 N.J. 534, 264 A.2d 34 (1970) (immunity currently governed by New Jersey Tort Claims Act, 59 N.J. Rev. Stat. tit. 59 (Supp. 1980)); Hicks v. State, 88 N.M. 588, 544 P.2d 1153 (1975) (currently governed by Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to -25 (1978)); Mayle v. Pennsylvania Dept. of Highways, 479 Pa. 384, 388 A.2d 709 (1978) (governmental immunity abolished in Ayala v. Philadelphia Bd. of Pub. Educ., 453 Pa. 584, 305 A.2d 877 (1973)); municipal immunity currently governed by 53 Pa. Cons. Stat. §§ 5311.201-.202 (Supp. 1980); Becker v. Beaudoin, 106 R.I. 562, 261 A.2d 896 (1970) (abolishes municipal immunity citing Hargrove); Long v. City of Weirton, 214 S.E.2d 832 (W. Va. 1975) (municipal immunity abolished); Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962) (abolishes municipal immunity); Jivelekas v. City of Worland, 546 P.2d 419 (Wyo. 1976).

Still other jurisdictions have waived sovereign immunity by statute but limited recovery. See Alaska Stat. § 09.50.250 (1973); Colo. Rev. Stat. § 24-10-101 et seq. (1973) (waives immunity to extent of governmental insurance); State Tort Liability Act, Hawaii Rev.Stat. ch. 662 (1976); Idaho Code §§ 6-901 to -928 (1979); Ill.Const. art. XIII, § 4 (liability limited to $100,000); Iowa Tort Claims Act, Iowa Code ch. 25A (1979) (administrative remedies must be exhausted); Kan. Stat. Ann. § 74-4716 (1972) (immunity abolished to extent of governmental insurance; repealed in 1979 Kan.Laws ch. 186 § 33); La.Const. art. XII, § 10; Mont.Rev. Codes Ann. §§ 2-9-101 to -114 (1979) (limits liability for economic damage to $300,000 per person and $1 million per incident; no recovery available for noneconomic damage); Nev.Rev. Stat. §§ 41.031-.039 (1979) (liability limited to $50,000); N.H. Rev. Stat. Ann. tit. 4, § 412:3 (Supp. 1979) (immunity abrogated to extent of governmental insurance; statute upheld in Estate of Cargill v. City of Rochester, 119 N.H. 661, 406 A.2d 704 (1979)); New Jersey Tort Claims Act, N.J. Rev. Stat. tit. 59 (Supp. 1980); Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to -25 (1978) (liability limited to $100,000 per occurrence for property damage, $300,000 for personal injury, and a total of $500,000 per incident); N.D. Cent. Code § 39-01-08 (1980) (immunity waived to extent of governmental insurance); Ohio Const. art. I, § 16; Or. Rev. Stat. §§ 30.260-.300 (1979) (liability limited to $50,000 for property damage per person, $100,000 for personal injury, and $300,000 total per incident); R.I. Gen. Laws §§ 9-31-1 to -12 (Supp. 1980) (liability limited to $50,000); Tex. [Public Offices, etc.] Code Ann. tit. 110A, art. 6252-19 (Supp. 1980) (liability limited to $100,000 per person and $300,000 per incident); Utah Gov't Immunity Act, Utah Code Ann. §§ 63-30-1 to -34 (1978); Vermont Stat.Ann. tit. 12, §§ 5601-5605 (1973) (liability limited to $75,000 per person and $300,000 per incident); Wash. Rev. Code chs. 4.92, .96 (1979).
[15] See also note 5 supra.
[1] 371 So.2d 1010 (Fla. 1979).
[2] 281 So.2d 1 (Fla. 1973).
[3] Id. at 4.
[4] It is interesting to note that the case which is cited as the "standard for local government sovereign immunity" (Russell v. The Men of Devon) was not decided until 1788, some 16 years after our Declaration of Independence. Thus, one could argue that since this was the first sovereign immunity case, full recovery was previously allowed as the common law norm. Additionally, Florida's first case on the subject, City of Tallahassee v. Fortune, 3 Fla. 19 (1850), distinguished Devon and allowed recovery against a municipality.
[5] 281 So.2d at 4.
[6] Art. I, § 21, Fla. Const.