FERGUSON, Judge.
Petitioners seek review of a final order issued by the State of Florida, Department of Administration, Division of Retirement [hereinafter the Division], which denied their requests to purchase at reduced rates their past service with a private bus company in the Florida Retirement System pursuant to section 121.081(l)(g), Florida Statutes (1983).
The facts of the case are not in dispute, and were ably summarized by the administrative hearing officer in her recommended order following a hearing held on May 16, 1983:
1. Petitioners Wesley E. Stone and John D. Wilson (deceased spouse of Norma Wilson) began working for the Miami Transit Company, a privately owned bus company, in February 1946 and in October 1951, respectively. Petitioner Edward F. Hodowud began working for the Miami Beach Railway, which was also a privately owned bus company, in November 1952.
2. The two bus systems above were among the four systems which were owned by Mr. William Pawley (hereinafter Pawley) and which Dade County, Florida (hereinafter Dade County), eventually purchased pursuant to a longstanding program to establish a countywide bus transportation system.
3. The process required for Dade County’s purchase of Miami Transit Company and the Miami Beach Railway extended over a lengthy period of time. The negotiation and contract approval and execution extended through 1961, and the bond issue attendant to that purchase was validated in 1962. On January 15, 1962, Dade County issued the following notice to Pawley employees:
All employees of the company who fail to report for work at their regularly established time and place during the 48 hours following the takeover shall be considered as having voluntarily left their employment and thereby forfeited their claim to comparable positions in the county service along with their pay status, seniority, vacation and other benefits which will be preserved under the rules and regulations of the Authority....
4. The Union which represented employees of the Pawley systems, Amalgamated Association of Street, Electric, Railway and Motor Coach Employees of *527 America (hereinafter the Union), was involved in labor negotiations concerning the future status of the Union after the transfer, and eventually Dade County filed a declaratory judgment action in circuit court against the Union. The circuit court held in part in its final decree that:
⅝ ⅜ ⅝ ⅜ ⅜
Plaintiffs are not authorized to recognize as lawful any strike directed against them and would not be authorized to do so upon consummation of the contractual transaction evidenced by the record in this cause.
Notwithstanding the above provisions, the Union went on strike on January 29, 1962. After issuing an order to show cause, the court ordered that the Union was enjoined and restrained from striking or continuing any strike for the purpose of coercing Dade County or any other governmental agency to engage in collective bargaining.
5. The Union continued on strike, and on February 9, 1962, Dade County took over operations of the Pawley systems through the independent Metropolitan Transit Authority (hereinafter MTA). The Union continued on strike against Dade County and MTA, a public employer against whom no union could legally strike at that time according to state law.
6. The continuing strike made the deadline established by Dade County in the January 15, 1962, notice impractical, if not impossible. Instead, the time from February 9, 1962, through and including March 26, 1962, was a “period of solicitation” for all former employees of the Pawley companies to commence work for MTA and to retain the same positions as they had with the Pawley companies. Those former employees who returned to work by March 26, 1962, were hired off an “eligibility list,” which contained the names of all the former employees. They did not have to complete the normal application process for new employees, such as application forms, physicals, job testing and ranking, etc. As of 5:00 p.m. on March 26, 1962, there were no more vacant employment positions.
sfc ⅜ jfc sfe ⅝ ⅝
8. Petitioners Stone and Wilson commenced work with MTA on October 19, 1966, and October 15, 1962, respectively; while Petitioner Hodowud commenced work on March 20, 1963. Since Petitioners did not commence work prior to March 27, 1962, they were not granted permanent civil service status or accrued benefits earned with Pawley.
9. Upon commencement of their employment with MTA, Petitioners became members of the State and County Officers and Employees’ Retirement System (SCOERS), Chapter 122, Florida Statutes; and eventually all Petitioners transferred into the Florida Retirement System (hereinafter FRS), Chapter 121, Florida Statutes.
10. In 1976, FRS was amended by Section 121.081(l)(g), Florida Statutes, which in general allowed persons who had become members of one of the state retirement systems by a transfer, consolidation, merger or assumption of functions or activities by a governmental agency to purchase past service in FRS.
11. In 1977, John Finney, a former employee of one of the Pawley companies who commenced work with MTA on February 9, 1962, compiled a list of similarly situated employees' as of May 1, 1975 (the date the 1976 legislative amendment was effective), who commenced work with MTA by March 27, 1962, and who had been granted longevity rights, accrued sick leave, annual leave, etc., by Dade County. He submitted that list to the Department of Administration, Division of Retirement for certification by the Division of eligibility by said employees to purchase their past service with the privately owned companies which merged with MTA.
12. The Division determined that the persons listed in Finney’s letter were eligible to purchase past service with Paw-ley. Each person on the “eligibility list” could apply to purchase the past service *528 if he/she wished to, since the purchase was optional and not mandatory.... Those employees who were certified and applied to purchase their past service purchased it pursuant to Section 121.-081(l)(g), Florida Statutes.
* *****
14. Since 1977, Petitioners have asserted that their names should have been included in the list forwarded by Finney to the Division, and they requested certification for eligibility to also purchase their past service as did others, pursuant to Section 121.081(l)(g), Florida Statutes.
15. The Division has consistently denied Petitioners the right to purchase their service with the Pawley companies. As a result of a final request by Petitioners, in December 1981 the Division issued a letter denying Petitioners the right to purchase the private bus companies’ service pursuant to Section 121.081(l)(g), Florida Statutes. Petitioners made timely application for this administrative hearing.
16. Simultaneous with the pendency of this proceeding, and as a result of statements made by A.J. McMullian in his deposition of July 14, 1982, Petitioners instituted proceedings before the Dade County Board of County Commissioners for a determination that they were qualified to purchase their past service under Section 121.081(l)(g), Florida Statutes. The Board referred the matter to its Independent Review Panel (hereinafter IRP), an advisory agency, for evaluation and recommendation. Such recommendation was eventually made, and on December 7, 1982, the Board approved a motion that Petitioners be permitted to purchase their past service at the reduced rate. The action of the Board was limited only to the Petitioners.
* * * * * *
18. Petitioners claim that the action of the Dade County Board of County Commissioners on December 7, 1982, puts them in the same status as the returned strikers. While the transmittal letter of Mr. Talbert states that the “... Commission instructed the County Manager that the above subject employees shall be considered by Dade County to have an original employment date reflecting their employment ...” with the Pawley companies, the actual motion by Commissioner Shack was “that Hodo-wud, Stone and Wilson be permitted to repurchase their past services from the State of Florida at the reduced rate.”
* * s£ * * *
The “findings” numbered 20 to 26 are essentially conclusions of law, which we disapprove. The Division adopted the recommended order in its entirety and disposed of petitioners’ exceptions to it in the final order under review.
Petitioners seek to buy back their service with Pawley pursuant to section 121.-081(l)(g), which provides in pertinent part:
(g) When any person, either prior to this act or hereafter, becomes entitled to and does participate in one of the retirement systems consolidated within or created by this chapter through the consolidation or merger of governments or the transfer of functions between units of government, either at the state or local level or between state and local units, or through the assumption of functions or activities by a state or local unit from an employing entity which was not an employer under the system, and such person becomes a member of the Florida Retirement System, such person shall be entitled to receive “past service” credit as defined in s. 121.021(18) for the time such person performed services for, and was an employee of, said state or local unit or other employing entity prior to the transfer, merger, consolidation, or assumption of functions and activities, [e.s.]
Section 121.021(18) defines past service as
the number of years and complete months and any fractional part of a month, recognized and credited by an employer and approved by the adminis *529 trator, during which he was in the active employ of an employer prior to his date of participation.
We respond first to the Division’s suggestion that this court cannot consider petitioners’ claims because petitioners failed to provide this court with a transcript of the May 16, 1983 hearing. The Division relies upon Florida Rule of Appellate Procedure 9.200(e), which requires petitioners to provide official transcripts to the appellate court. Section 120.57(l)(b)6., Florida Statutes (1983), however, places upon the state agency the responsibility to preserve all testimony in the proceedings, and to provide the transcripts at the actual cost of reproduction. Ordinarily, then, the final order of the agency is based upon a complete record, including an official transcript of the administrative hearing below. In this case, however, at the time the final order was issued, the testimony of the May 16 hearing had not been transcribed — a finding contained in the order. Petitioners seem to agree with the agency’s obvious position that a transcript was unnecessary because the facts are not disputed, and that the question before this court requires that we interpret and apply the controlling statutes. We therefore accept the factual findings of the hearing officer without exception. See Gallion v. Belk, 180 So.2d 349 (Fla. 1st DCA 1965), cert, denied, 188 So.2d 822 (Fla.1966) (upon failure to present the entire record, appellate court must accept all findings of fact made by lower tribunal).
We next address the legal findings made by the hearing examiner in her recommended order, as incorporated into the final order under review. In deciding the question of petitioners’ eligibility to purchase past service credit pursuant to section 121.081(l)(g), she wrote:
Whether Petitioners should be permitted to purchase their past services from the State of Florida at the reduced rate is a decision for Respondent and not for Dade County to make. The County’s role is to provide certification of the employer/employee relationship. While Dade County could have made Petitioners county employees as of January 9, 1962, with full employment rights and benefits (including pay, annual leave, sick leave, longevity pay, and length of service recognition), it did not do so based on the clear wording of the approved resolution (as opposed to Mr. Tal-bert’s transmittal letter of Mr. Weiss’s testimony). It is understandable that Dade County passed a resolution simply supporting Petitioners in their claim rather than placing Petitioners in the same situation as any other Pawley employee who came to work for Dade County before March 27, 1962, since the latter position would cost Dade County $104,-695 for retroactive benefits.
The Division thus makes the argument that petitioners would be eligible to purchase credit for past service pursuant to section 121.081(l)(g) only if the county commission had certified them as employees retroactive to the cut-off date that had been set by the county. This certification would effectively place petitioners on the list of employees compiled in 1977, referred to in paragraph 11 of the recommended order.
We find that the county commission’s resolution, which stated simply that the petitioners “be permitted to repurchase their past services from the State of Florida at the reduced rate,” clearly achieved the same result. Certification is merely a legal authentication which can be effected without the use of that magic word. In determining that petitioners were eligible to purchase past service credit at the lower cost, the county commission necessarily made a finding that the rehiring of petitioners was a continuation of the prior employment. As the governing body of the entity which had by administrative rule imposed the cut-off date of March 27, 1962, the county commission had the authority to create, legislatively, a special exception to the rule. Cf. Cauley v. City of Jacksonville, 403 So.2d 379, 381 & n. 5 (Fla.1981) (legislative bodies are authorized to grant relief for governmental wrongs through waiver of sovereign immunity by passing a *530 special claims bill for the amount in excess of the statutory limit).
The county clearly intended to preserve and maintain, to the fullest extent reasonably possible, as to these petitioners, all the rights, privileges, and benefits of persons previously employed by a private transit system which becomes county-owned by a takeover. Understandably, a delay in return to work, depending on the length of the delay, could, and in this case did, result in a forfeiture of pay status, seniority, vacation and sick leave. But to accept the Division’s position — that petitioners forfeited their right to purchase past service credit as former employees of a private company taken over by government — requires us to needlessly treat the county’s resolution as a nullity. See Arnold v. Shumpert, 217 So.2d 116 (Fla.1968) (court must assume that legislature intended legislation to serve a useful purpose, rather than imputing to the legislature an intention to do a useless act); see also Warnock v. Florida Hotel and Restaurant Commission, 178 So.2d 917 (Fla. 3d DCA 1965), appeal dismissed, 188 So.2d 811 (Fla.1966).
We hold that petitioners are eligible to purchase retirement credit for their past service with Pawley at the reduced rate pursuant to section 121.081(l)(g).
Reversed and remanded with directions.